GATES *v.* CARD.

(*Nashville.*　January 11, 1894.)

1. DEED.　*Delivery and acceptance.*

A deed becomes irrevocable, and invests the grantee with absolute title, where, after being signed, and acknowledged, it is delivered to the grantee unconditionally, and retained by him for nearly two years, both parties intending that it should take effect.　(*Post, pp. 335–339.*)

2. SAME.　*Second deed void.*

And, in such case, no title remains in the vendor, and none can be passed by his subsequent deed to another for the same land.　(*Post, pp. 339, 340.*)

3. SAME.　*Purchaser's rights.*

And a purchaser from the first grantee upon the faith of his duly registered deed is not affected by the subsequent destruction or cancellation of that deed and conveyance of the land to another by the original grantor.　(*Post, pp. 339, 340.*)

4. RESULTING TRUST.　*Insufficient evidence of.*

The uncorroborated evidence of husband and wife will not support the wife's claim to a resulting trust in the husband's property where the rights of third persons are involved.　(*Post, 340, 341.*)

Cases cited and approved: Page *v.* Gillentine, 6 Lea, 240; Grotenkemper *v.* Carver, 9 Lea, 280; Hardison *v.* Billington, 14 Lea, 346.

5. SAME.　*Not available against an innocent purchaser.*

A resulting trust cannot be set up against an innocent purchaser.　(*Post, p. 341.*)

Cases cited and approved: Sandford *v.* Weeden, 2 Heis., 71–81; Gordon *v.* English, 3 Lea, 640; Chadwell *v.* Wheless, 6 Lea, 312; Moore *v.* Walker, 3 Lea, 665.

6. ESTOPPEL.　*Of married woman by joining husband in signing deed.*

By joining her husband in the execution of his deed, the wife estops

Gates *v.* Card.

herself to dispute the grantee's title thereunder, although her name does not appear in the face of the deed as a grantor. (*Post, pp. 341, 342.*)

Cases cited and approved: Berrigan *v.* Fleming, 2 Lea, 271; Anderson *v* Akard, 15 Lea, 192.

## FROM MARSHALL.

Appeal from Chancery Court of Marshall County. WALTER S. BEARDEN, Ch.

THOS. R. MYERS and JAMES H. LEWIS for Gates.

SWANSON & MARSHALL for Card.

WILKES, J. This bill is filed to perpetually enjoin a writ of possession, issued from the Chancery Court of Marshall County upon a decree and *procedendo* from this Court. The Chancellor granted the relief prayed, and Card and wife have appealed and assigned errors.

The controversy involves the title to a house and lot in Belfast, Marshall County. Prior to the filing of the bill in this cause, there was a litigation involving the same property between the defendants and Thos. Gates, the style of the cause being *Gates* v. *Montgomery et al.* Upon final hearing of that controversy in this Court, it was decreed that the right to the property was in Mrs.

Card, and the cause was remanded to the Chancery Court of Marshall County, to the end that a writ of possession might issue from that Court to put Mrs. Card in possession, and such writ was issued by that Court. Thereupon, Nannie Gates, wife of Thos. Gates, and C. S. Chapman, as next friend for the minor children of Thos. and Nannie Gates, none of whom were parties to the suit of *Gates* v. *Montgomery et al.*, filed the present injunction bill to stay and perpetually enjoin the execution of said writ of possession, upon the theory that the house and lot belonged to them, and that Thos. Gates, the father, had merely held it as trustee for them.

It appears that, in April, 1883, Thos. Gates bought the house and lot from B. M. Curtis, and took deed to the same directly to himself and in his own right, and with no conditions, limitations, or trusts. This deed he carried home and placed in a trunk or closet, where it remained until February 10, 1885. At that date another deed was executed by Curtis, conveying the same house and lot to Thos. Gates, as trustee for his wife and children, and with certain limitations not necessary to mention.

What became of the first deed is left in uncertainty. Curtis, the maker, says that he took it up and destroyed it when he executed the second deed, but Gates, the grantee, does not remember whether it was taken up and destroyed by Curtis or not. The last deed remained in Gates' house

until February 14, 1890, when it was registered in Marshall County.

In July, 1885, prior to the registration of this latter deed, but after its execution, Mrs. Card bought the property, and took a deed to the same, signed by Gates and his wife, Nannie Gates, and has paid the purchase-money, and now insists that she is an innocent purchaser from Thos. Gates, without notice of any trust upon the land in favor of Mrs. Gates and her children.

It appears that one R. S. Montgomery acted as agent for Mrs. Card and her husband in purchasing this land from Gates, and during his negotiations with Gates he inquired about the title, and was assured by Gates that it was all right, and, as an evidence of this, exhibited to him the first deed made by Curtis to him, vesting the title to the property in Gates alone and without any trust. Montgomery, after examining the deed, agreed to buy the property if Gates would have the deed registered, which Gates promised to do.

Montgomery, under the impression that the deed had been registered, as promised, prepared a deed to Mrs. Card, which was signed by Gates and wife and delivered to Montgomery or Mrs. Card. A cash payment was made, and notes executed for the balance of the purchase-money. At this time neither Montgomery nor Mrs. Card had any notice of the second deed, which put the title to the property in trust for Mrs. Gates and her children.

22—9 P

It was in the possession of Gates and wife, and had never been registered.

While Mrs. Gates signed the deed to Mrs. Card with her husband, her name is not mentioned in the body of the deed. It was properly acknowledged by both husband and wife.

About the time of the final decree of this Court in the case of *Gates* v. *Montgomery et al.*, the result of which was unfavorable to Gates and in favor of Mrs. Card, for the possession of the property, the second deed was registered.

Upon these facts the Chancellor was of opinion, and decreed, that Thos. Gates, the husband, had practiced a fraud upon Mrs. Card, and upon Montgomery, her agent, in representing that he held the land in his own right, and in exhibiting the deed to that effect, but that Mrs. Gates and her children were no parties to this fraud and were not affected by it, and, furthermore, that the father, Thos. Gates, practiced a fraud upon his wife and children in thus making this sale.

He also held that, under the facts as detailed in the evidence, the first deed had never been delivered or accepted, and that the property was bought with the means of Mrs. Gates, under an agreement that the title should be taken to her, as was done by the second deed, and, as a consequence, Mrs. Gates and her children were entitled to the property, and Mrs. Card was perpetually enjoined from obtaining possession of the same, although she was held to be an innocent purchaser for valuable

consideration paid before any notice of the trust character of the property.

The Chancellor in his discretion taxes Gates and his wife with the costs.

We think the Chancellor is in error upon several grounds.

We are of opinion that the first deed was delivered to Thos. Gates, and accepted by him, in April, 1883. It was received by him and placed in a trunk or closet, and retained until February, 1885. It is true he says this deed was not complete, but he fails to state in what sense it was incomplete. It was exhibited by him to Montgomery, the agent of Mrs. Card, as the muniment of his title, and on the faith of it the purchase by Mrs. Card was made. It was then complete, with the exception that it had not been registered, but was signed and acknowledged by Curtis and wife. It is also true that Mrs. Gates says she did not accept this deed. This is, in a sense, no doubt true, inasmuch as the deed was made to her husband and not to her. It was not incumbent on her to accept it, but it does appear that she had full knowledge of it and made no objection to it, and for two years or more made no demand upon Curtis, the maker, for any correction of it, and not until about the time when Mrs. Card had gained the property in her litigation with Thos. Gates, the husband.

Whether the first deed was destroyed or delivered up is uncertain, and, in our view, immaterial.

The title to this property was by it vested in Thos. Gates, the husband, and the canceling, delivery up, or destruction of the deed could not affect Mrs. Card, whose rights had been fixed, in the meantime, on the faith of it. When Curtis made the second deed to Gates for the benefit of his wife and children, there was no title or estate in him that he could convey, and that deed was a nullity as to Mrs. Card, whose rights had intervened.

The only theory upon which Mrs. Gates and her children can hold the property is, therefore, not this deed, but upon the idea that her means bought it, and were invested in it, under an agreement that the title was to be taken to her, and thus establish a resulting trust in her favor.

She states, in general terms, that her property or means contributed to the purchase of this property under such an agreement. She states that at the time she was married she owned some property which she inherited from her mother, and that it had always been agreed between herself and her husband that this should be her individual property, and not that of her husband.

It appears that her marriage occurred some ten years or more before this transaction, and we are called upon to believe that this property, whatever it was, was thus held during this time. She fails to specify in what the property consists, or how it had been kept separate, or how much there was of it. It is worthy of note also that neither she nor her husband state that the wife's money paid

for the lot, but simply that it contributed to it, but how or to what extent is not stated. The only reference as to the character of the property is the statement of the wife that she had an undivided interest in some land, but whether it was sold and the proceeds invested in this lot there is no evidence whatever. This could not have been the property which she says was agreed to be kept separate, inasmuch as, if it was an undivided interest in real estate descended to her, the title would be vested in her and no agreement would be necessary. The testimony of the husband and wife is in very general terms, and is wholly uncorroborated by any other testimony.

A resulting trust in the wife cannot be sustained upon the uncorroborated testimony of the husband and wife, as against third persons. *Page* v. *Gillentine*, 6 Lea, 240; *Grotenkemper* v. *Carver*, 9 Lea, 280; *Hardison* v. *Billington*, 14 Lea, 346. Neither can it be set up as against an innocent purchaser. *Sandford* v. *Weeden*, 2 Heis., 71–81; *Gordon* v. *English*, 3 Lea, 640; *Chadwell* v. *Wheless*, 6 Lea, 312; *Moore* v. *Walker*, 3 Lea, 665.

Mrs. Gates has no status in a Court of Equity, because she signed the deed to Mrs. Card with her husband, and, while this may not be sufficient to convey any interest in the land which she might have had, because her name is not used in the face of the deed conveying the property, still it is sufficient to estop her from disputing Mrs. Card's title to the property. *Berrigan* v. *Fleming*, 2 Lea,

271; *Anderson* v. *Akard*, 15 Lea, 192. Her children are mere volunteers, and must stand or fall upon the rights and equity of the mother.

The decree of the Chancellor must be reversed and the injunction dissolved, and a writ of possession will issue from this Court to put Mrs. Card into possession of the property.

The costs of the cause in this Court and in the Court below will be paid by complainants.