## PARLOW *v*. TURNER.

## (*Jackson.* April Term, 1915.)

1. **STATUTES. Title. Sufficiency.**

The title of Acts 1913, ch. 26, entitled "An act to remove the disabilities of coverture from married women and to repeal all acts and parts of acts in conflict with the provisions of this Act," is sufficient, within Const., article 2, section 17, declaring that no bill shall embrace more than one subject, to be expressed in the title, to justify provisions in the body of the act abrogating the common-law disabilities of married women, and declaring that every married woman shall have the same capacity to acquire, control, enjoy, and dispose of all property, to make any contract in reference to it, and to bind herself personally, as if unmarried. (*Post, p.* 342.)

Acts cited and construed: Acts 1913, ch. 26.

Constitution cited and construed: Art. 2, sec. 17.

2. **CONSTITUTIONAL LAW. Husband and wife. Rights of husband. Statutory provisions.**

Acts 1913, ch. 26, abrogating all common-law disabilities of married women, and providing that every woman, now married or hereafter to be married, shall have the same capacity to acquire, enjoy, and dispose of all property and to make any contract in reference thereto as if she were not married, is not invalid as destroying any vested rights of a husband in a marriage occurring prior to the passage of the act, and his wife may recover the rent of land purchased by her prior to the marriage. (*Post, p.* 342.)

Acts cited and construed: Acts 1879, ch. 141; Acts 1849-50, ch. 36.

Cases cited and approved: Lucas v. Rickerich, 69 Tenn., 726; Taylor v. Taylor, 80 Tenn., 490; Baker's Ex'rs. v. Kilgore, 145 U. S., 487; Ables v. Ables, 86 Tenn., 333.

Cases cited and distinguished:   Guion v. Anderson, 27 Tenn., 325.
Code cited and construed:   Sec. 4234 (S.).

## FROM MADISON.

Appeal from the Circuit Court of Madison County.—
S. J. EVERETT, Judge.

H. E. PEARSON, for appellant.

L. L. FONVILLE, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the
Court.

The plaintiff and his wife intermarried during the
year 1909. A short time prior to the marriage the
wife had purchased and obtained a deed in fee to two
small tracts of land lying in Madison county. After
the marriage they lived together about two years, and
then voluntarily separated, and have since lived apart.
No children were born to the union. Subesquent to the
separation the husband contributed nothing to the
maintenance of his wife. Her only support has been
the rent of the two small tracts, which she has been
leasing to tenants at a monthly rental in her own name.
The husband made no objection to this course of action
on her part until June, 1914. He then demanded of
the tenant, J. W. Turner, certain arrears of rent which
had accrued, subsequently to the passage and going in-
to effect of an act of 1913, presently to be more partic-

ularly mentioned. The tenant refused to pay the husband, but instead made payment to the wife. Thereupon the present suit was brought by the husband against Turner, before a justice of the peace, to recover the rent, and an appeal was prosecuted from that court to the circuit court of the county. The circuit judge gave a peremptory instruction in favor of Turner. The case, without going through the court of civil appeals, was brought directly to this court, because its determination was supposed to involve the constitutionality of chapter 26 of the Acts of 1913.

That act reads as follows:

"A bill for an act to be entitled 'An act to remove disabilities of coverture from married women, and to repeal all acts and parts of acts in conflict with the provisions of this act.'

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women, and its effect on the rights of the property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all prop-

erty, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married.''

The second section repeals all acts and parts of acts in conflict, and the third and last fixed January 1, 1914, as the date on which the act was to take effect.

1. It is said the act is unconstitutional because it violates so much of article 2, section 17, of the Constitution, as provides that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title.

There is but a single subject, and that appears fully in the title, viz., the relief of married women from the disabilities of coverture. That subject fully covers every element that is written into the body of the act. The first clause, standing alone, ''that married women be, and are, hereby fully emancipated from all disability on account of coverture,'' would have made thoroughly effective the purpose expressed in the title. All that followed merely amplified the thought, but each term of particularization lay implicit within the clause quoted.

The act, therefore, does not offend against the section of the Constitution referred to.

2. If the act be given full operation according to its terms, does it, under the facts of the present case, destroy any vested right of the husband?

The rights acquired at common law, in the wife's land by the husband, through marriage, aside from tenancy

by the curtesy, are thus described in *Guion* v. *Anderson*, 8 Humph., 325:

"By marriage, the husband gains an estate of freehold in the inheritance of his wife, in her right, which may continue during their joint lives. . . . He is not, however, solely seized, but jointly with his wife. The technical phraseology of the common-law pleaders, to express the interest of the husband in the estate of his wife, is 'that husband and wife are jointly seized in right of the wife.'"

In exercise of the right so acquired, he was entitled to take the rents and profits of the land and appropriate them to his own use. 3 Mod. Am. Law, 440; 5 Id., 261.

These common-law rights were materially modified in this State, by statute, long prior to the passage of the act of 1913. As early as the assembly of 1849-50 (chapter 36), an act was passed forbidding the husband to sell or incumber the wife's land, except by a joint deed executed by the two spouses, the wife joining in the manner prescribed by law for the conveyance of land by married women, also forbidding his interest to be sold under execution during the life of the wife, and forbidding the dispossession of the husband and wife. Shan. Code, section 4234.

It was held, however, that, notwithstanding this section of the Code the rents of the wife's land could be seized and appropriated to the husband's debts. *Lucas* v. *Rickerich*, 1 Lea (69 Tenn.), 726. The theory of the decision was that the common-law estate of freehold

in his wife's general real estate was not by the statute and Code section referred to converted into a separate estate; therefore his right to the rents remained unimpaired. But in that case, as remarked of it in a later one, it appeared that the rents in controversy there had already accrued, and that the future productions of the land were not considered, or even thought of.

The next legislature that assembled, probably as a result of the foregoing decision, passed an act to the effect that the rents and profits of the property or estates of married women should not thereafter be subject to the debts or contracts of their husbands, except by the consent of such married women obtained in writing, with a proviso that the act should not interfere with the husband's tenancy by the curtesy. Acts of 1879, ch. 141.

An attack was soon made on this statute on the ground that it interfered with the husband's vested estate which he had acquired in the wife's land by virtue of the marriage, or what had been left of that estate by the act of 1849-50, supra. A creditor of the husband, holding a debt created prior to the act of 1879, levied on some corn which grew on the wife's land subsequent to the passage of the act. The wife resisted the creditor's appropriation of the corn, and her contention prevailed. It was held that the right of the husband to the profits of the wife's land was a contingent one, as applied to each successive year's crop, dependent, not only upon the continuance of his *status*

as husband, the continuance of the wife's ownership of the land, the absence of a decree of settlement on her by a court of equity, but also upon the actual future production of a crop, and that, before the crop had been grown, the legislature might intervene, and either qualify or destroy his interest, in such future crops. *Taylor* v. *Taylor,* 12 Lea (80 Tenn.), 490.

The act was subsequently attacked as being in violation of the federal constitution, both on the ground that it interfered with vested rights, and that it impaired the obligation of a contract. This creditor, likewise holding a judgment rendered against the husband prior to the passage of the act, had levied on certain cattle which, within the meaning of the act, were profits of the wife's lands. The cattle were sold under the execution, and bought by the execution creditor. The wife brought a replevin suit for the cattle. The trial court rendered judgment in her favor, and on appeal to this court that judgment was affirmed. Subsequently the case was taken to the supreme court of the United States on writ of error, and there the judgment of this court was affirmed. *Baker's Ex'rs* v. *Kilgore,* 145 U. S., 487, 12 Sup. Ct., 943, reported in 36 L. Ed., 786, *sub nom. Neilson* v. *Kilgore.*

That court, after referring to the statutes, and the cases we have already mentioned, said:

"We do not doubt the validity of the act of 1879, as applied to the judgment properly rendered against Scruggs. The particular profits of the wife's estate here in dispute had not, when that act was passed,

come to the hands of the husband. They were not, at that time in existence, nor in any legal sense vested in him. Nor were they ever vested in him. He had a mere expectancy with reference to them when the act was passed. Moreover, his right, prior to that enactment, to take the profits of his wife's estate, did not come from contract between him and his wife, or between him and the State, but from a rule of law established by the legislature, and resting alone upon public considerations arising out of the marriage relation. It was entirely competent for the legislature to change that rule, in respect, at least, to the future rents and profits of the wife's estate. Such legislation is for the protection of the property of the wife, and neither impairs nor defeats any vested right of the husband. Marriage is a civil institution, a *status*, in reference to which Mr. Bishop has well said: 'Public interests overshadow private—one which public policy holds specially in the hands of the law for the public good, and over which the law presides in a manner not known in the other departments.' 1 Bishop on Marriage, Divorce, and Separation, section 5. The relation of husband and wife is, therefore, formed subject to the power of the State to control and regulate both that relation and the property rights directly connected with it, by such legislation as does not violate those principles which have been established for the protection of private and personal rights against illegal interference.

"The act of 1879 did not infringe any vested right of the husband, much less did it infringe any right belonging to his creditors."

The act of 1879 again came up for consideration in the case of *Ables* v. *Ables,* 86 Tenn., 333, 9 S. W., 692. That was a contest between the husband and wife. She had rented her land to one Harlow. The husband objected, and brought an action of unlawful entry and detainer against the wife's tenant. She filed a bill in equity to enjoin the prosecution of the action. The wife's bill was dismissed. In support of her bill she insisted that she was entitled to the absolute control of the land. The court held that this view was erroneous; that while the rents and profits of the wife's lands could not, under the act referred to, be subjected to the claim of the husband's creditors, and while he could not contract them away, without the consent of the wife in writing, yet as governor of the family, the head of the house, he had the right to rent out her lands, and to collect the rents for the benefit of the family.

This bare privilege was all that the act of 1879 left to the husband in respect of the rents and profits of the wife's lands, aside from such rights as he might have as tenant by the curtesy. This was the *status* when the act of 1913 was passed.

The facts of the present case do not raise any question of curtesy, only the husband's right to collect the rents, accrued after the last-mentioned act went into effect.

The quetsion must be resolved on the principles applied to the act of 1879, the contingent nature of the husband's right as to future rents, and the power of the legislature to interfere before the contingency has ceased, and the right has developed into one *in praesenti*. We deem it unnecessary to consider how far the matter may properly rest upon the extraordinary power which the legislature possesses over the marriage relation and the property rights of the pair *inter sese*, for the public good, referred to in the opinion of Mr. Justice Harlan, just quoted.

On the grounds stated, we are of the opinion that, under the act of 1913, Mrs. Parlow had the right to collect the rents from her tenant Turner, and therefore that the latter was within his rights when he paid the money to her.

It may be true that the husband, by living apart from his wife, without her fault, abandoned his powers and duties as governor of the family, and hence his right to either rent out the land, or to collect the rents; but we do not decide this question, preferring to rest our judgment upon the broader ground.