IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

WESTERN DIVISION

JACKSON, APRIL TERM, 1918

MADELINE GILL *v.* MRS. J. W. McKINNEY *et al.*

(*Jackson.* April Term, 1918.)

1. **DEEDS. Validity. Designation of Grantee.**
Where vendor accepted cash payment on land and, at request of
agent for both parties, signed deed to the grantees paying the
consideration, which deed had been prepared by the agent, it
was immaterial whether vendor knew the exact names · of
grantees or not, since she clearly intended to convey to the
customers produced by the agent. (*Post, p.* 553.)

2. **DEEDS. Delivery.**
There was a delivery of a deed to grantee, although not actually
delivered into her hands, where it was treated as delivered by
all parties in interest, and was registered by a common agent
with consent of all. (*Post, p.* 553, 554.)

Cases cited and approved: McEwen & Thompkins v. Bamberger,
71 Tenn., 581; Ewen v. Troost, 33 Tenn., 186; Nichol v. David-
son County, 3 Tenn. Ch., 547.

3. **DEEDS.** Alterations of instruments.

Where deed to husband and wife had been delivered, the subsequent erasing of the wife's name from the deed had no effect on her title. (*Post, pp.* 554-558.)

4. **ESTOPPEL.** Permitting sale of property.

Where property was conveyed to husband and wife, who gave notes for the balance due thereon, and the husband, after separation from the wife, induced a third person to take over the land and assume his obligation, the wife's name being erased from the deed, the husband was estopped to deny the third person's title, and the latter would be entitled to the husband's interest in the land. (*Post, pp.* 554-558.)

Cases cited and approved: Huffman v. Huffman, 69 Tenn., 491; Howard v. Huffman, 40 Tenn., 563; Gates v. Card, 93 Tenn., 334.

Case cited and distinguished: Ames v. Norman, 36 Tenn., 683.

5. **HUSBAND AND WIFE.** Estates by the entireties abolished.

Public Acts 1913, chapter 26, emancipating married women, abolished estates by the entireties, and deed of land to husband and wife created tenancy in common; joint tenancy having been abolished by Thompson-Shannon Code, section 3677. (*Post, pp.* 558, 559.)

6. **COURTS.** Stare decisis. Constitutional questions.

A prior decision of the supreme court that an act is constitutional and contains but one subject is controlling. (*Post, pp.* 559-561.)

Acts cited and construed: Acts 1913, ch. 26.

Cases cited and approved: Parlow v. Turner, 132 Tenn., 339; Railroad v. Byrne, 119 Tenn., 278; Lillienkamp v. Rippetoe, 133 Tenn., 57; Bennett v. Hutchens, 133 Tenn., 65; Knoxville, etc., v. Vangilder, 132 Tenn., 487; Chattanooga v. Carter, 132 Tenn., 609; Baker v. Dew, 133 Tenn., 126; Bailey v. Apperson, 134 Tenn., 716; McIrvin v. Lincoln Memorial University, 138 Tenn., 260; Gould v. Frost, 138 Tenn., 467.

Code cited and construed: Sec. 3677 (T.-S.).

Gill v. McKinney.

7. **STATUTES. Title. Constitutionality.**
It is no objection to act that its body contains one general subject, if title is single and covers body.  (*Post, pp.* 559-561.)

FROM SHELBY

Appeal from the Chancery Court of Shelby County. —Hon. F. H. HEISKELL, Chancellor.

P. H. PHELAN, JR., and JAS. L. McREE, for appellant.

CARUTHERS EWING and D. B. SWEENEY, for appellee.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The bill in this case was filed to remove a deed of Mrs. McKinney to defendant Knight as a cloud upon complainant's title. Mrs. McKinney was the owner of the land in controversy. On June 29, 1914, she signed and executed a deed conveying the land to R. N. Gill and his wife, the complainant. This deed was duly recorded. Later Mr. and Mrs. Gill separated. She went to Little Rock, Ark., and her husband remained in Memphis, Tenn., on the land. The negotiations for the sale and purchase of the land by Gill and wife from Mrs. McKinney were conducted by one T. F. Turley as agent for both parties. Turley called Mrs. McKinney on the telephone and asked her if she would take $4,000 for the land, and she agreed to do this. One thousand dollars was paid in cash and

the balance of the purchase price was agreed to be paid, in the original contract, in one, two, and three years. Mrs. Gill had sold a tract of land which belonged to her and had accepted notes for the deferred payments due in one, two, three, and four years. At her instance and request Mrs. McKinney agreed to change the contract so as to make the payments correspond with the notes which Mrs. Gill held. The deed was executed to Gill and wife. Mrs. Gill paid one-half of the cash payment and Gill paid the other half, and they executed joint notes for the balance. After Mrs. Gill and her husband separated, at the instance of Gill, Turley interested the defendant Knight in the land. He assumed Gill's obligations in the matter and took the land at the purchase price which he (Gill) and Mrs. Gill agreed to pay Mrs. McKinney. Knight, however, treated the transaction as though Mrs. Gill had no interest in it. Mrs. Gill was eliminated from the deed executed to her and her husband by Mrs. McKinney by the simple device of erasing her name therefrom. Knight knew this. Turley and Gill knew of Mrs. Gill's rights in the matter.

The case was submitted to a jury, and it found that Knight knew of Mrs. Gill's interest in the land, but that Mrs. McKinney did not. It also found that there was a delivery of the deed upon the making of the cash payment to Turley. There is no dispute in the evidence but what the $1,000 was paid by Mr. and Mrs. Gill. These findings are not conclusive of the case.

The question is made that Mrs. McKinney did not know that Mrs. Gill was a grantee in the deed which she executed. It is said that this is established by the pleadings, and it is not a matter of dispute; however, it is clear that Turley was Mrs. McKinney's agent for this particular transaction, and that he drafted the deed naming Mr. and Mrs. Gill as grantees, and on behalf of Mrs. McKinney accepted the cash payment from them. Mrs. McKinney signed the deed at Turley's request, and it would be immaterial whether she knew the exact names of the grantees or not. It is beyond dispute that she intended to convey the land to the customers produced by Turley. She accepted Mrs. Gill's check, indorsed it, and collected the money on it in addition to changing the original contract with respect to the dates of the payment at Mrs. Gill's request so as to conform to the dates of the notes which Mrs. Gill held; so that there can be no question but what the deed of Mrs. McKinney to Gill and wife is a valid deed.

We also think that there is no material dispute in the evidence as to the delivery of this deed to Mr. and Mrs. Gill. After Mrs. McKinney signed the deed, Turley received the money for her from Mr. and Mrs. Gill, and also received from Mrs. Gill the registration fees, and agreed to and did have the deed registered. Mrs. Gill said that he physically delivered the deed to her and that she, in turn, delivered it to him for the purpose of having it registered. This makes a clear case of delivery; but

whether the deed was actually delivered to her hands or not it was treated as delivered by Turley and all others in interest, and he agreed to and did have it registered. McEwen & Tompkins v. Bamberger, 3 Lea, 581; McEwen v. Troost, 1 Sneed, 186; Nichol v. Davidson County, 3 Tenn. Ch., 547.

The chancellor held in accord with this opinion upon the question of delivery, and also held that the deed created an estate by the entireties in Mr. and Mrs. Gill. He held that the subsequent deed of Mrs. McKiney to Knight, at the instance of Gill, conveyed to Knight only Gill's interest in the estate by the entireties, and that Mrs. Gill should be required to pay the $3,000 balance of the purchase money, and hold and enjoy the land for and during her natural life, and that if Gill should survive her, Knight would be entitled to the property after her death.

It is perfectly manifest that erasing the name of Mrs. Gill from the deed to her and Gill had no effect whatever upon the title she received by the execution of the deed, and the subsequent conveyance of the entire interest in the land to Knight by Mrs. McKinney likewise could not affect her title except to becloud it. As to Gill, of course he would be estopped to deny the title received by Knight, and for that reason Knight has, or is entitled to receive from Gill, whatever interest in the land was created by the deed from Mrs. McKinney to him and Mrs. Gill. Huffman v. Huffman, 1 Lea, 491; Howard v.

*Huffman,* 3 Head, 563, 75 Am. Dec., 783; *Gates* v. *Card,* 93 Tenn., 334, 24 S. W., 486.

The question then is, What estate was created in Mr. and Mrs. Gill by the deed of Mrs. McKinney? At common law it undoubtedly was an estate by the entireties. It is said, however, for Knight, that chapter 26, Acts 1913, emancipating married women, had the effect to abolish such estates and the deed created in Mr. and Mrs. Gill an estate of equal moieties, which in this State is a tenancy in common.

There is much learning upon the origin and nature of estates by the entireties. No case that we have examined is fuller or more accurate, more learned or able, than our own case of *Ames* v. *Norman,* 4 Sneed, 683, 70 Am. Dec., 269. The opinion of the court in that case was prepared by Judge McKinney, who was doubtless one of the ablest and most learned common-law judges in America.

At the common law, the union of husband and wife was deemed so complete as to make them one person in legal contemplation. This legal union of two individuals grew out of and depended upon the fact of marriage; so when land was conveyed to husband and wife jointly, which, but for this legal union, would have created a joint tenancy, it was held by the common-law judges to create a tenancy by the entireties. In the case referred to, Judge McKinney said:

"First. By the common law, the husband and wife are as one person in law; the legal existence of the

wife is incorporated into that of the husband; and though, in modern times, exceptions to this doctrine have been introduced, the general principle still exists. As one of the necessary results of this unity of persons in husband and wife, it has always been held that where an estate is conveyed or devised to them jointly, they do not take in joint tenancy; constituting one legal person, they cannot be vested with separate or separable interests; they are said, therefore, to take by entireties; that is, each of them is seised of the whole estate, and neither of a part. And this tenancy may exist whether the estate is in fee, for life, for years, or other chattel interest, and whether the property be in possession, reversion, or remainder. Co. Lit. 187, b; 1 Bright's Husband and Wife, 25. As a consequence peculiar to this tenancy, it is laid down in the books that, during their joint lives, neither can alien the estate thus held without the consent and concurrence of the other, and the survivor takes the whole estate; neither can sever the joint interest; the whole estate belongs to the wife as well as to the husband, and the husband cannot by his own conveyance, the wife not joining therein, divest her estate. 1 Greenleaf's Cruise, 365; 2 Bl. Com. 182; 2 Kent's Com., 132; 4 Kent., 363.

"From the peculiarity of this tenancy, the unity and indivisibility of the seisin, there is some confusion in the cases respecting the power of the husband alone to make any conveyance or disposition of the land thus held during their joint lives, and also

as to the right of creditors of the husband to subject the same to the satisfaction of the husband's debts. But upon examination of the authorities, it appears to be settled that during their joint lives the husband may dispose of the estate. He may lease or mortgage it, or it may be seized and sold upon execution for his debts. This doctrine, properly understood, is that the husband, without the wife joining him in the conveyance, cannot alien the estate, so as to affect the interest of the wife in case she survives him, as in that event she will be entitled to the whole. 4 Kent's Com., 363. Nor will the wife's interest be affected by the attainder of the husband; she will, on surviving, take the whole estate. By the attainder of the husband of felony, the crown will not acquire the fee, but only the pernancy of the profits during the coverture of the wife. Co. Lit., 351."

The above description of such an estate was accepted as the law in this state, and so far as we are advised it has never been doubted since. But in 1913 the legislature passed an act to "remove the disabilities of coverture from married women, and to repeal all acts and parts of acts in conflict with the provisions of this act." It was provided:

"That married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights . . . of the wife, is totally abrogated, and marriage shall

not impose any disability or incapacity, on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married.''

We think the legislature intended to abolish estates by the entireties by the foregoing act. We also think that the language employed by it directly effects that result. The estate is an incident of marriage which grew out of the legal union of husband and wife. It arose from the disability of the wife on account of marriage, and cannot exist without it. Because she had no legal existence she could not take an equal moiety with her husband, but being named with him as grantee in the deed, it was so unjust for her not to take at all, the judges thought she must take in event she survived her husband. In that case her legal existence would be restored to her and she could enjoy the land conveyed in the deed. So the estate is a creature of the common law, and is an incident of marriage; this being true, when the legislature abolished the ''com-

mon law as to the disabilities of married women" and its "effects on the rights of property of the wife," it must have included this particular estate. The act further declared "that marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort." By express language of the statute such "disability" or "incapacity" as to property was totally abrogated. We think this necessarily included estates by the entireties.

It is said if such a construction is given chapter 26, Acts of 1913, as we have given it herein, that the act would contain more than one subject and for that reason would be unconstitutional; but as the court had held the act constitutional, and had declared that it contained but one subject in *Parlow* v. *Turner*, 132 Tenn., 339, 178 S. W., 766, therefore the act cannot be given such a construction. It is no objection to an act that its body contains one general subject, if the title to the act is single and covers the body. *Railroad* v. *Byrne,* 119 Tenn. (11 Cates), 278, 104 S. W., 460. So this argument avails nothing.

An examination of the following cases will show that this court has given the act such construction as would fulfill the intention of the legislature to completely emancipate married women except where such emancipation either is not permitted by a proper construction of the act, or the court is forbidden

by sound public policy to attribute such an intention
to the legislature.

In *Lillienkamp* v. *Rippetoe,* 133 Tenn., 57, 179 S. W.,
628, L. R. A., 1916B, 881, Ann. Cas., 1917C, 901, it was
held that this act did not confer upon the wife the
right to sue her huband for a personal tort on the
grounds of public policy.   In *Bennett* v. *Hutchens,* 133
Tenn., 65, 179 S. W., 629, the question here deter-
mined was expressly reserved; but in *Knoxville, etc.,*
v. *Vangilder,* 132 Tenn., 487, 178 S. W., 1117, L. R. A.,
1916A, 1111, it was held that the wife could sue for
personal injuries to herself without joining her hus-
band in the suit; and in *Chattanooga* v. *Carter,* 132
Tenn., 609, 179 S. W., 129, it was held that the act did
not deprive the husband of his common-law right to
sue for damages for injuries inflicted upon his wife.
This holding was obviously correct, because the act
did not purport to affect the rights of the husband.
To the same effect is *Baker* v. *Dew,* 133 Tenn., 126,
179 S. W., 645, where it was held that the act did not
affect the husband's right to the personal property
of the wife.   The case of *Bailey* v. *Apperson,* 134
Tenn., 716, 185 S. W., 710, dealt with a question
arising before the passage of the act.   In *McIrvin*
v. *Lincoln Memorial University,* 138 Tenn., 260, 197
S. W., 862, it was held that the act removed the
exemption in section 4448 of Thompson-Shannon's
Code, of married women from the general statute
of limitations.   In *Gould* v. *Frost,* 138 Tenn., 467, 196
S. W., 949, it was said that the act was a remedial one,

Gill v. McKinney.

intended to remove from married women the disability of coverture, and it was held that it repealed the provision in the Code with reference to mechanics' liens which required the contract for the improvement of married woman's real estate to be in writing.

A great array of cases from other jurisdictions is cited on the briefs of counsel for petitioner and defendant. A review of these cases would be of little service because in many of the jurisdictions where the question has been decided the married woman's statute is not as broad in its terms as the one under consideration. It is stated in 13 R. C. L., p. 1101:

"That the better opinion in this country, however, is that the operations of these statutes should be limited to the separate property of married women, leaving unaffected and unimpaired the previous law regarding the creation, existence, and essential attributes and consequences of estates by entireties."

Whether the foregoing statement can properly be made with respect to the married woman's statutes of other States we are not called upon to say, but it is manifest that our statute cannot be limited in its effect to the separate property of married women. Whether the learned author uses the expression "separate property" in its technical sense or not, our statute is so broad in its terms that we are forbidden to limit its effects to any particular species of property. It says that married women are "fully emancipated from all disability on account of coverture," and "the common law as to the disabilities of

140 Tenn.—36

married women and its effects on the right of property of the wife" is "totally abrogated," and "marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort." Clearly this cannot be given such limitation.

Being of opinion that the deed of Mrs. McKinney to Gill and wife did not create an estate by the entireties, it could not have created an estate of joint tenancy because that estate is abolished by our Code. Section 3677, Thompson's-Shannon's Code. But they have taken by equal moieties as though they were not married and would be tenants in common. *Hull v. Hull*, supra.

Being tenants in common, the deed from Mrs. McKinney to Knight would only have the effect of conveying to him an undivided one-half interest. This being true, the decree of the chancellor requiring Mrs. Gill to pay the entire purchase price is erroneous. She should pay only one-half of the purchase price, and she and Knight would be the owners of the land as tenants in common with all the incidents of such an estate.

This also disposes of the question of improvements.

The pleadings are not framed so at to enable us to adjudicate the rights of the parties as tenants in common as to the improvements. If later a partition of the land should be sought by either party, this question can then be determined. The rights of both parties are reserved upon that point.

The decree of the court of civil appeals is modified so as to conform with this opinion, and affirmed.