J. B. HERRIN WILSON, alias J. B. HERRON et al., Appellees, v. FRANCES SIMS CLARK, TOMMIE ROWELL, BERNICE SIMS, HAZEL PARKS, and JOHN W. HARRIS, Trustee, Appellees, and CATHERINE YOUNG, NEWTON BENT, JAMES BENT, EXIE ALEXANDER, GRACIE LEWIS, ALBERT BENT, HENRY HASTINGS BENT and MARIE J. MIXON, Appellants.—288 S. W. (2d) 740.

Western Section, at Jackson. November 22, 1954.

Petition for Certiorari denied by Supreme Court June 10, 1955.

Leonard D. Pierotti, Memphis, for appellants Catherine Young, Newton Bent, James Bent, Exie Alexander, Gracie Lewis, Albert Bent and Henry Hastings Bent.

John T. Shea, Harry C. Pierotti, Memphis, for appellant Marie J. Mixon, Adm'x.

John W. Harris, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for appellee John W. Harris, trustee.

Richard M. Barber, Memphis, for J. B. Herrin Wilson.

CARNEY, J.   This appeal involves the title to a parcel of land referred to in the pleadings as the Trigg Avenue property, located near Riverside Drive, in Memphis, Tennessee.

By deed of date March 22, 1916, of record in the Register's office of Shelby County, Tennessee, in Book 639, page 60 Mary A. Summers conveyed the Trigg Avenue property to "James Bent and Fannie Bent."  James Bent and Fannie Bent were husband and wife, but no reference to this fact is made in the deed of date March 22, 1916, to them.

Said James Bent and wife, Fannie Bent, went immediately into the possession of said property, and continued in possession of the same until the death of James Bent intestate in Shelby County, Tennessee, on March 27, 1939.

On September 17, 1923, Mary A. Summers executed and delivered to James Bent and wife, Fannie Bent, a deed to the same Trigg Avenue property which was already in

the possession of James Bent and wife for a consideration of "$10.00 and other good and valuable consideration, to me in hand paid." Said deed contained the usual covenants of seizin and against encumbrances, and warranty of title on the part of the said grantor, Mary A. Summers. This deed was presented for registration on September 18, 1923, and recorded in Book 899, page 44 of the Register's office of Shelby County, Tennessee.

On September 15, 1924, James Bent and wife, Fannie Bent, executed and delivered a deed of trust on the Trigg Avenue property to Guy P. Long and P. H. Phelan Jr., as trustees, to secure the payment of their indebtedness of $900 evidenced by 60 principal notes of $15 each, due monthly, bearing 6% interest, and made payable to bearer. This deed of trust contained the following reference to source of title:

"Further reference is here made to a deed made by Mary A. Summers to James Bent and wife, Fannie Bent, which appears of record in the Register's office of the County of Shelby and State of Tennessee in Book 899, page 44."

This deed of trust was presented for registration on December 1, 1924, and recorded in Book 957, page 161 of the Register's office of Shelby County, Tennessee, and was marginally released on November 27, 1929, by the Shelby Mortgage Company.

On January 14, 1931, James Bent and wife, Fannie Bent, executed a deed of trust on the same Trigg Avenue property to Ada J. Russell, trustee, to secure their note of $250 to Luther H. Graves. This deed of trust had the following reference to the source of title:

"Being the same property conveyed to James Bent and Fannie Bent as shown in deed of record in Book 899 page 44 of the Register's office of Shelby County, Tennessee."

On May 30, 1939, Dr. W. R. Graves, executor of Luther Graves, deceased, Lamar F. Graves, a former law partner of Luther Graves, and Ada J. Russell, trustee, executed and delivered a release of the deed of trust mentioned above, and recited that said $250 had been paid and satisfied during the life of Luther Graves.

After the death of James Bent without a will, Fannie Bent continued in the possession of said real estate and claimed to own the same in fee simple.

On May 25, 1939, Fannie Bent, a widow, executed a deed of trust to Campbell Yerger and P. C. Clark, as trustees, to secure an indebtedness of $380 evidenced by 38 notes for $10 each, payable monthly beginning June 25, 1939.

This deed of trust was marginally released on November 14, 1940, by C. P. Coleman. This deed of trust contained the following reference to source of title:

"This is all the same property conveyed to James and Fannie Bent by Warranty Deed dated March 22, 1916, and recorded in Book 639 page 60 of the Register's office of Shelby County, Tennessee. On said date James and Fannie Bent were husband and wife, and James Bent died in the year 1927, intestate, and at his death he left no heirs, and the title to all of his property vested in the undersigned Fannie Bent."

On November 8, 1940, Fannie Bent executed another deed of trust to the Trigg Avenue property to P. C. Clark and Campbell Yerger, trustees, securing the payment of 50 notes of $10 each, payable monthly beginning December .8, 1940. This deed of trust also contained the same reference to the source of title as the deed of trust dated May 25, 1939, to wit:

"Being all of the same property conveyed to James Bent and wife, Fannie Bent, by Warranty Deed dated March 22, 1916, and recorded in Book 639 page 60 of the Register's office of Shelby County, Tennessee. The said James Bent died during the year 1927 intestate and left no heirs and title vested in Fannie Bent as surviving tenant by the entirety."

This deed of trust was marginally released March 13, 1944, by C. P. Coleman.

Fannie Bent died without a will in Shelby County, Tennessee, on June 12, 1942.

From 1942 until the filing of the original bill in this cause, the appellant, Marie J. Mixon, as administratrix of the estate of Fannie Bent, and as agent for the heirs of Fannie Bent, has been managing and collecting the rents from said real estate.

The original bill was filed by an heir of Fannie Bent seeking a sale for partition of the land and for an accounting of rents from Marie J. Mixon. A number of different pleadings were filed. Finally, all of the heirs of Fannie Bent and their assignees, and the heirs of James Bent, have been properly brought before the Court for an adjudication as to the title of said lot. The lot has been sold and the proceeds are being held in the reg-

istry of the Chancery Court of Shelby County for distribution.

The learned Chancellor held that the effect of James Bent and wife, Fannie Bent, receiving and recording the warranty deed of date September 17, 1923, purporting to convey the land to them jointly and holding under said deed until the time of the death of James Bent, was to create an estate by the entirety in the grantees under the doctrine of equitable estoppel; and, hence, upon the death of James Bent in 1939 Fannie Bent took the fee simple absolute in said land by survivorship, and only her heirs and their assignees were entitled to share in the proceeds from the sale of said land, and that the heirs of James Bent were entitled to no part of the same.

The Chancellor based his decision upon the cases of McCreary v. McCorkle, Tenn. Ch. App. 1899, 54 S. W. 53; Poindexter v. Rawlings, 1900, 106 Tenn. 97, 59 S. W. 766; Faulkner v. Ramsey, 1942, 178 Tenn. 370, 158 S. W. (2d) 710; and Reid v. Reid, 1929, 230 Ky. 835, 20 S. W. (2d) 1015.

The heirs of James Bent have appealed from this decision and the case is before us for review of the action of the Chancellor.

As stated by the Chancellor, the record in this cause does not reflect any positive explanation of the transactions, to wit, the two deeds from Mary A. Summers, extrinsic of the documents themselves.

Before the decision announced by the Supreme Court in the case of Gill v. McKinney, 1918, 140 Tenn. 549, 205 S. W. 416, it was the opinion of many attorneys, possibly most attorneys in Tennessee, that the effect of the deed of Mary A. Summers to James Bent and Fannie Bent of

date March 22, 1916, was to convey to them an estate by the entireties in said lands therein described. However, the decision in the case of Gill v. McKinney, supra, ruled that Chapter 26 of the Public Acts of the 1913 General Assembly of Tennessee emancipating married women abolished estates by the entireties and, therefore, James Bent and wife took as tenants in common under the first deed.

The General Assembly of 1919 by Chapter 126 provided that tenancies by the entireties were re-established.

We can think of no other reason why James Bent and/or wife, Fannie Bent, would have obtained the execution and delivery of another deed to the same property on September 17, 1923, unless one or both of them had been advised that tenancies by the entireties were abolished between 1913 and 1919, and their purpose was to hold this land as tenants by the entireties, which the new deed would have created if the grantor, Mary A. Summers, had been seized and possessed of the land.

By the execution of the two deeds of trust by James Bent and wife, Fannie Bent, on September 15, 1924, and January 14, 1931, in which they referred to the deed of Mary A. Summers of date September 17, 1923, as their source of title, they both became charged with notice of the existence and legal effect of said deed which was to create in them an estate by the entirety.

In the case of Poindexter v. Rawlings, 1900, 106 Tenn. 97, 59 S. W. 766, it was held that where the husband, a joint grantee with his wife, returned the deed to the grantor and requested the execution of a new deed to the wife, which was done, and the wife took possession and claimed title thereunder, even though this transaction passed no

additional interest to the wife, it precluded the husband from asserting his joint interest as against her and, hence, the husband had no interest in the land which the original grantor could subject to the original vendor's lien.

It was the opinion of the Court that even though the surrender of the first deed carried no title to the grantor and, therefore, the original grantor had no title to convey by the second deed, yet the execution and delivery of the second deed purporting to convey a fee simple to the wife, worked an estoppel on all the parties to the transaction.

In McCreary v. McCorkle, Tenn. Ch. App. 1899, 54 S. W. 53, there was a general warranty deed executed by an attorney in fact for all the heirs of a deceased landowner to Franklin McCorkle, a husband. Two of the heirs were married women, and the deed by the attorney in fact was insufficient to convey their one-sixth interest each. Ten years later, in 1883, after the land had been paid for, all of the heirs, including the two married women and their husbands, executed a new deed to the same property to Franklin McCorkle and wife, Josephine E. McCorkle, and which said second deed recites the former transactions, including the satisfaction of the vendor's lien for the unpaid purchase money. It was held that the heirs of Franklin McCorkle were estopped to question the validity of the second deed to McCorkle and wife, and that the wife became owner in fee simple of the land by survivorship upon the death of the husband, Franklin McCorkle.

The holdings in Poindexter v. Rawlings were reaffirmed in Faulkner v. Ramsey, 1942, 178 Tenn. 370, 158 S. W. (2d) 710 in which the Supreme Court held that where

a husband accepted a deed conveying title to land to him and his wife as tenants in common, and placed deed of record and occupied the premises for twenty-three years prior to the death of his wife and five years thereafter before asserting that he and his wife held land as tenants by the entireties, the husband was precluded under doctrine of estoppel from claiming that the title was held by them as tenants by the entireties.

In the case of Reid v. Reid, 1929, 230 Ky. 835, 20 S. W. (2d) 1015, a husband and wife accepted and recorded two successive deeds from the same grantor to the same real estate. The first deed conveyed the property as tenants in common, and the second deed expressly created a remainder in fee simple to the survivor. The litigation was between the heirs of the husband and wife, respectively. The Court held that the parties to the two transactions were sui juris and that the effect was a novation irregularly accomplished whereby they accepted deed No. 2 in lieu of deed No. 1. The Court said that while both grantees lived, each would have been estopped to claim adversely to deed No. 2 and, therefore, upon the death of the husband, his children, who would take from him, were also estopped to claim adversely to deed No. 2.

The heirs of James Bent insist that the heirs of Fannie Bent are, likewise, estopped to claim under the second deed because Fannie Bent in the two deeds of trust that she executed referred to the first deed from Mary Summers as the source of title.

■ However, in our opinion, upon the death of James Bent in 1939, the interest of Fannie Bent ripened into a fee based upon more than seven years' adverse possession by her and James Bent under registered color of title, to wit, the deed of date September 17, 1923.

■ It thus appears that at the time of the execution of the two deeds of trust by Fannie Bent, she was the owner in fee simple of the real estate by survivorship of James Bent, and the incorrect references in her two deeds of trust to the first deed from Mary A. Summers as her source of title did not prejudice any of the rights of any of the parties to this litigation and, therefore, would not estop Fannie Bent or her heirs from claiming the land under a correct source of title, to wit, the second deed from Mary Summers. And we note, further, that in these two deeds of trust Fannie Bent did actually claim full title to the lot.

Therefore, all the assignments of error must be respectfully overruled and the appeal of the heirs of James Bent dismissed.

## Appeal of Marie J. Mixon

We now discuss the appeal of Marie J. Mixon, administratrix of Fannie Bent, who was defendant and cross-complainant in the case below.

She complains of the action of the Chancellor in failing and refusing a reference to the Clerk and Master to determine a fair and reasonable fee for her and her attorney for services rendered in connection with the administration of the estate of Fannie Bent. The Chancellor did order a reference to determine if the said Marie J. Mixon was entitled to any compensation for her services as attorney in fact and as trustee in the management and preservation of the real estate involved in this litigation, and, if so, what amount, and the Chancellor also ordered a reference to determine and fix the amount of a fair and reasonable fee for her atotrney in the management and preservation of the real estate involved in this litigation.

Fannie Bent died intestate on June 12, 1942, leaving six heirs at law. At the request of several of such heirs and next of kin, Marie J. Mixon was appointed and qualified as administratrix of the estate of Fannie Bent.

At the time of this qualification Fannie Bent's estate was supposed to consist of a lot on Utah Street in Memphis, and the lot on Trigg Avenue discussed in the first portion of this opinion; a second-hand automobile, and other personal property worth less than $500. The real estate was encumbered by a deed of trust which was then in default and about to be foreclosed.

On June 26, 1942, all of the heirs at law of **Fannie Bent** executed and delivered to Marie J. Mixon a general power of attorney authorizing her to take possession of the two tracts of land and from the income of said real estate to pay all debts and expenses due and owing by the estate of Fannie Bent, including expenses of the administration of the estate of Fannie Bent.

Accordingly, the defendant, Marie J. Mixon, did collect rents from the real estate, kept the buildings in repair, managed the rental of the property, paid delinquent and current taxes, discharged tax liens, paid funeral bills in installments, paid all judgment creditors, and prevented a loss of the real estate through foreclosure, and delayed insolvency proceedings against said real estate until the full indebtedness could be liquidated.

The management of the real estate continued until the filing of the original bill in this cause on December 18, 1952, by the complainant as one of the heirs of Fannie Bent, seeking a sale of the real estate for partition, and seeking an accounting from the defendant, Marie J. Mixon.

The defendant, Honorable John W. Harris, Esq., as assignee of one of the heirs of Fannie Bent, was made a party defendant, and he in turn filed a cross-bill making the unknown heirs of James Bent parties defendant in order to clear the title to the two tracts of land involved. The defendant, Marie J. Mixon, answered and filed a cross-bill naming the heirs of James Bent, and all of whom are now before the Court. The defendant, Mixon, made an accounting and showed that all of the indebtedness of Fannie Bent had been liquidated out of the proceeds of the rentals from said real estate, and that the administration of the estate was completed except for a final settlement and discharge of her as administratrix, and payment of compensation to herself and her attorney, Honorable John T. Shea, Esquire.

She further reported that she had approximately $1,300 net balance on hand as income from said real estate.

The Chancellor appointed a receiver for the real estate and ordered the payment into the registry of the Chancery Court all money in the hands of the defendant, Marie J. Mixon.

The Chancellor also ruled that the title to the property on Utah Street was vested in the heirs of James Bent, who were impleaded and made defendants to the two cross-bills filed in the cause. This decision was not appealed from and has, therefore, become final.

The Chancellor's decree further recites that the parties had entered into an oral stipulation in open Court that "this court in this proceeding fix a fair and reasonable fee for the services rendered by the defendant and cross-complainant, Marie J. Mixon, and the legal services rendered by Jno. T. Shea, Esq., of the City of Memphis, Ten-

nessee, retained by her as Administratrix of the estate of Fannie Bent, deceased, and as attorney-in-fact for the heirs at law of Fannie Bent, deceased, in the administration of said estate, and all matters incidental thereto, and in the management of the real estate involved in this litigation and the defense of any litigation instituted against the estate of the said Fannie Bent to be paid from the net rentals received by the cross-complainant from the real estate described in said original bill, or any proceeds from the sale of any or all of the same."

The defendant, Marie J. Mixon, was granted a discretionary appeal by the Chancellor upon his refusal to order a reference as to fees for the administratrix and her attorney in connection with the administration of the estate of Fannie Bent.

■ The appellant insists the Chancellor should have ordered the transfer of the case from the Probate Court to the Chancery Court. We do not see that the Chancellor was in error for failing to order the transfer. It appears that all of the indebtedness of the estate has been paid, and the time has long since expired for filing claims by creditors, and nothing further remains to be done in the administration of said estate except to pay the administratrix and her attorney and to close the administration by a final settlement and discharge of the administratrix.

While we do not think the Chancery Court should have ordered a transfer of the administration of the estate of Fannie Bent from the Probate Court to the Chancery Court, yet we do think that under the facts and circumstances of this case it would make for a more prompt and efficient disposition of all the matters in controversy among all the parties to this litigation for the Chancery

Court to determine the entire amount of fees to which the administratrix and her attorney are entitled rather than to have the Probate Court determine a portion of the fees and the Chancery Court another portion of the fees.

It is very difficult to draw the line between services rendered by Marie J. Mixon as administratrix and her services as agent or attorney-in-fact over the real estate. The situation is further complicated by the fact that the written power of attorney provides that the compensation for services in connection with the administration of said estate is to be paid out of the proceeds from the management of the real estate.

Some phases of Marie J. Mixon's accounting are still in dispute and unsettled. A portion of the rents and proceeds of sale will belong to the heirs of Fannie Bent, and a portion will belong to the heirs of James Bent. So far as the record shows, the only source of payment of compensation to the administratrix or her attorney will be from net rentals or proceeds of sale of real estate.

The proceeds in the registry of the Chancery Court cannot be finally disbursed until the compensation of the administratrix and her attorney are determined. Under these circumstances, we think it would eliminate considerable circuity of action for the Chancery Court to determine the entire compensation to be paid the administratrix and her attorney for all services.

In addition, all interested parties are already properly impleaded and before the Chancery Court, and the Chancery Court can make a full and complete adjudication of all the matters in controversy between all the parties in its final decree.

■ "Equity delights to do complete justice and not by halves." Gibson's Suits in Chancery, 4th Ed., page 54.

■ "When Chancery has jurisdiction for one purpose, it will take jurisdiction for all purposes." Gibson's Suits in Chancery, 4th Ed., p. 53.

Therefore, we are of the opinion that His Honor, the Chancellor, should have directed in the reference that the Clerk and Master report a reasonable fee to the administratrix and her attorney for their services in the administration of the estate of Fannie Bent, as well as a report as to the fees, if any, for the other services in connection with the preservation of the real estate, and in this manner, upon the final decree, all of the rights of all of the parties can be finally and completely adjudicated and the money in the registry of the Court disbursed.

Accordingly, the assignment of error of Marie J. Mixon is sustained.

Decree will be entered in accordance with the above opinion, and one-half the costs of this appeal will be taxed against the heirs of James Bent and the sureties on their appeal bond, and the other one-half will be paid out of the funds in the registry of the Chancery Court below.

Avery, P. J., (Western Section) and Bejach, J., concur.