### McPHERSON v. MISSISSIPPI VALLEY TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1903.)

No. 1,758.

1. FEDERAL AND STATE COURTS—PRIORITY OF JURISDICTION—ESTATES OF DECEDENTS.

  An administrator appointed by a proper probate court to take charge of the property of a decedent which is within its territorial jurisdiction

---

¶ 1. Priority of jurisdiction between state and federal courts, see note to Louisville Trust Co. v. City of Cincinnati. 22 C. C. A. 358, § 3.

See Courts, vol. 13, Cent. Dig. § 1410.

is an officer of the court, and holds the property as such, and subject to the court's orders; and where the proper distribution of the estate has been finally determined by the courts of the state, in conformity with which the probate court has made an order of distribution, a federal court will not entertain an action against the administrator to compel him to deliver the property to another claimant, whether or not such claimant was a party to the proceedings in the state courts.

2. ASSIGNMENT—INTEREST IN ESTATE—RIGHTS ACQUIRED BY ASSIGNEE.
An assignee of the interest of a man in the estate of his deceased wife under an assignment made while the estate was in process of administration in a probate court is bound by the orders and judgments of such court to the same extent as the assignor. Such an assignee does not acquire title to any specific property by the assignment, but merely the right to such property or funds as shall be awarded to the assignor in the final distribution of the estate.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS—DESCENT OF PROPERTY.
A federal court is bound by a decision of the Supreme Court of a state with respect to the descent of property of an intestate which was within the jurisdiction of the state courts.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Jessie May McPherson, the plaintiff in error, brought this action of replevin, without bond, against the Mississippi Valley Trust Company, the defendant in error, to recover the possession of certain moneyed securities. The parties waived a jury, and filed a written stipulation that the court should try the cause. The court made the following findings of fact:

"(1) At and prior to the time of the bringing of this action the plaintiff, Jessie May McPherson, was a citizen and resident of the state of New York, and the defendant, the Mississippi Valley Trust Company, was then, and continued to be, a corporation created under the laws of the state of Missouri having its principal office and place of business in the city of St. Louis, state of Missouri.

"(2) On February 20, 1895, William J. McPherson, the father of the plaintiff, a citizen of the state of New York, and residing at 475 Plymouth avenue, city of Rochester, in said state, was legally married to Mary B. McVean, then a citizen of the state of Missouri, and who had for years resided in the city of St. Louis, in said state.

"(3) On the 22d of March, 1895, Mrs. Mary McVean McPherson died intestate at her residence in the city of St. Louis, Missouri, without having changed her actual place of residence from the city of St. Louis, Mo. Mrs. McPherson left surviving her neither father, mother, children, nor other direct descendants; her nearest blood relatives surviving her being two brothers, Horace Locke and William C. Locke.

"(4) At the time and place of her death Mrs. McPherson had in her possession certain articles of personal property, which belonged to her before her marriage with William J. McPherson, and which had not been taken into the physical possession of William J. McPherson before her death, being ten bonds of the Union Depot Railroad Company, of the value of $12,150; 300 shares capital stock of the Adams Mining Company, total present value $9; 50 shares capital stock of Granite Mining Company, present value $100; 50 shares capital stock of Elizabeth Mining Company, of no present value; diamonds and jewelry of the value of $370; and Overland real estate bonds, worth $1,500, present value, otherwise called the 'Henderson Bonds.'

"(5) On the 26th day of March, 1895, William J. McPherson filed in the probate court of the city of St. Louis, Missouri, a paper or petition reading as follows:

---

¶ 3. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

" 'On the 22d inst. my wife, Mrs. Mary B. McPherson, died in this city at her home, No. 4362 West Belle Place, leaving property in this state to the amount of about twenty-six thousand dollars. I am a resident of Rochester, New York. Deceased left no descendants, no father or mother, leaving no sisters, but two brothers; one, Horace Locke, of this city, and the other, William C. Locke, of Mulberry, Mass. I ask the appointment of the Mississippi Valley Trust Company as administrator of said estate.

" 'Respectfully,                                           William J. McPherson.'

"And in consonance with this petition, on the 26th of March, 1895, the said probate court appointed the Mississippi Valley Trust Company the administrator of the estate of the said Mary B. McPherson, deceased, which appointment was accepted by the trust company, and the administration of the estate was proceeded with by the administrator under the direction and supervision of the said probate court of the city of St. Louis, Mo.

"(6) On June 16, 1896, William J. McPherson was appointed administrator of the estate of Mary B. McPherson by the surrogate's court at Rochester, in the state of New York.

"(7) The administration of the estate of Mary B. McPherson was duly proceeded with by the defendant in the probate court of St. Louis, Mo., one annual report being filed, and settled June 9, 1896, and on June 18, 1897, a final report, showing that debts and claims had all been settled and paid, was submitted to the court, the requisite statutory notice of final settlement having been given, and thereupon such settlement was approved by the court.

"(8) The settlement and report then made showed that there were then in the possession of the defendant, as administrator of the estate of Mary B. McPherson, ten bonds of the Union Depot Railroad Co. of $1,000 each, three hundred shares of the Adams Mining Company, seventy-five shares of the Granite Mountain Mining Company, fifty shares of the Elizabeth Mining Company, $1,500 of the bonds of the Fair Grounds R. E. Company, and certain articles of jewelry of the value of $370.

"(9) William J. McPherson applied to the probate court of the city of St. Louis for an order upon the defendant, as administrator, directing the delivery to him of the property in possession of the defendant, setting forth his appointment as administrator by the surrogate's court in the state of New York. Horace Locke and William C. Locke, brothers of Mary B. McPherson, applied to the probate court for an order directing the defendant, as administrator, to deliver the property of the estate left in possession of the defendant to them, they claiming to be entitled thereto under the laws of the state of Missouri.

"(10) Upon the hearing of these several applications the probate court of the city of St. Louis, Missouri, on the 12th of July, 1897, entered an order directing the defendant, as administrator, to deliver the property of the estate in its possession to William J. McPherson, as domiciliary administrator. From this order the other claimants, Horace Locke and William C. Locke, appealed to the circuit court of the city of St. Louis, wherein a hearing was had, and on December 19, 1898, a judgment was entered holding that Horace Locke and William C. Locke were the legal distributees of the estate of their sister, and were entitled to the property in possession of the defendant as administrator. From this judgment an appeal was taken by William J. McPherson to the Supreme Court of the state of Missouri, and, the case having been fully heard in that court at the April term, 1901, an opinion was handed down affirming the ruling and judgment of the circuit court, the opinion being filed May 14, 1901.

"(11) The mandate from the Supreme Court showing the affirmance of the judgment was duly filed in the circuit court of the city of St. Louis, Mo., on June 24, 1901, and was certified to the probate court for its guidance in the premises on June 29, 1901.

"(12) Upon being informed of the action of the Supreme Court in the premises, the defendant prepared a final report, for the purpose of closing up the estate in conformity with the ruling of the Supreme Court, and was about to file the same in the probate court of the city of St. Louis, Mo., when the defendant was served with notice of the bringing of the present suit in this court, to wit, the United States Circuit Court for the Eastern Division

of the Eastern District of Missouri, the said suit being of the nature of an action in replevin, wherein the present plaintiff claimed the property of said estate then in the possession of the defendant, but in which suit a writ of replevin has not issued.

"(13) Upon receiving notice of the bringing of this suit in replevin in the United States court, the defendant, setting forth the facts in this case, applied to the probate court of the city of St. Louis for an order staying further proceedings in the probate court until the disposition of the suit in the federal court, but this application was refused, and on July 9, 1901, an order was entered in the probate court directing the defendant, as administrator, to deliver the property in its possession to Horace Locke and William C. Locke. From this order the defendant prayed an appeal to the circuit court, was refused by the probate court, and thereupon the defendant applied to the circuit court of the city of St. Louis, Mo., for a writ of mandamus to the probate court directing that court to allow the appeal prayed for. The circuit court refused to grant the writ of mandamus, and thereupon the probate court cited the officers of the defendant to appear and show cause why they should not be punished for contempt for the failure to deliver the property in their possession to Horace Locke and William C. Locke, in accordance with the previous order of the court. Thereupon the defendant, in conformity with the order of the probate court of July 9, 1901, delivered the property in its possession to Horace Locke and William C. Locke, except the bonds of the Henderson Realty Co., of the value of $1,500 and $900 in cash, which are yet in possession of defendant.

"(14) On the 22d of April, 1895, William J. McPherson executed, for value, an assignment in writing to his daughter Jane B. McPherson of his interest in the estate of his deceased wife, in the form following:

" 'In consideration of the sum of seventeen thousand dollars, to me the undersigned, William J. McPherson, of Rochester, New York, in hand paid by Jane B. McPherson of the same place aforesaid, this 22d day of April, 1895, the receipt whereof is hereby acknowledged, I have sold, assigned, set over and transferred, and by these presents do hereby sell, assign, set over and transfer to the said Jane B. McPherson, all the personal property and estate, and all my right, title and interest in and to the personal property and estate, of my late wife, Mary B. McPherson, who deceased in the city of St. Louis, in the state of Missouri, on or about the 22d day of March, 1895, and in and to the avails thereof and that shall arise therefrom, and of which estate the Mississippi Valley Trust Company of St. Louis aforesaid is the administrator, to have and to hold the said property and estate and the avails thereof to the said Jane B. McPherson, her heirs and assigns forever, and the said the Mississippi Valley Trust Company, as such administrator or otherwise, and any person, trustee or company into whose hands said property, estate and avails thereof may come or be is hereby authorized and directed to deliver and pay over to said Jane B. McPherson, her heirs or assigns, said property and estate and such avails, and the probate court of St. Louis, Missouri, is authorized and directed or requested to make any such order as necessary, if any order of said court necessary for the payment and delivery of said property, estate and avails to said Jessie May McPherson, her heirs or assigns.

" 'In witness whereof, I have hereunto set my hand and seal this 22d day of April, A. D. 1895.                               Wm. J. McPherson.'

"(15) On the 17th day of September, 1895, the said Jane B. McPherson executed, for value, an assignment of her interest in said property to her sister, Jessie May McPherson, substantially in the same form as the assignment to her set forth in the last finding."

Upon these findings of fact the court rendered a judgment for the defendant in the action, and the plaintiff sued out this writ of error.

John H. Overall and Chester H. Krum, for plaintiff in error.

William F. Woerner, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

PER CURIAM. The opinion of the learned trial judge covers all the issues of law in this case, and, agreeing with its reasoning and conclusions, we adopt it as the opinion of this court:

"SHIRAS, District Judge. The principle is well settled that, in order to avoid unseemly conflicts in the enforcement of judgments, arising between the federal and state courts, care must be exercised not to interfere with the possession and control over property brought within the possession of a court of the one jurisdiction by 'proceedings subsequently brought in a court of the other jurisdiction.

"It is equally well settled that, when a proper probate court takes charge of an estate of a decedent, the property being within the territorial jurisdiction of the court, and appoints an administrator to take charge of the property, the administrator is an officer of the probate court. His possession is that of the court, and he is in duty bound to obey the orders and judgment of that court. Byers v. McAuley, 149 U. S. 608, 615, 13 Sup. Ct. 906, 37 L. Ed. 867.

"Furthermore, no court should permit such use of its process as that it will subject the administrator to the stress of being subjected to contradictory judgments touching the disposition of property placed in his possession as administrator. True, as is held in Byers v. McAuley, supra, when the administration has been carried forward to the point of the distribution of the remaining assets of the estate, all debts having been paid, and no adjudication has been had on the question of distribution, a circuit court of the United States may, on behalf of citizens of other states, the amount involved being sufficient, take jurisdiction over a suit brought to determine who are entitled as distributees to share in the estate; but when the adjudication has been rendered the actual distribution must be made by the probate court.

"In the case now before the court it is shown that the question of the distribution of the assets in the hands of the administrator was first presented to the probate court in 1897, and an order of distribution was entered on July 12, 1897. The question was carried on appeal before the circuit court, and on December 19, 1898, a judgment was entered to the effect that under the laws of the state of Missouri the brothers were entitled to the property as distributees, in preference to the nonresident husband; and the Supreme Court of the state, on the appeal of the husband, William J. McPherson, affirmed the ruling and judgment of the circuit court by an opinion filed May 14, 1901. Therefore, before the present suit was filed in this court, which was on June 25, 1901, the probate court had passed upon the question of the proper distribution of the assets in its possession. The question had thence been carried to the highest court of the state, and it had been therein held and adjudged that under the laws of the state of Missouri the brothers of the deceased were the proper distributees, to the exclusion of the nonresident husband. The question of distribution had, therefore, been heard and adjudged before the bringing of this suit in this court, and under the doctrine laid down in Byers v. McAuley, supra, this court should not now entertain a suit intended to again litigate this question.

"It is contended that the present plaintiff was not a party to or in privity with the proceedings carried through by her father and assignor touching this question of distribution, and therefore they are of no effect or weight in the consideration of the question before the court. Granting, for the moment, that the plaintiff is not bound by the judgment and proceedings had in the courts of Missouri, and that it is still open to her to assert her rights to the property in question, it does not follow that she can be permitted to enforce them in a suit against the administrator. If she has a right to the property, she can enforce it by a suit against Horace and William C. Locke, into whose possession it passed. They obtained the property by virtue of the orders and judgments of the courts of Missouri. But if she was not a party to, nor bound by, the proceedings had in the courts of Missouri, then Horace and William C. Locke cannot rely on these proceedings as a defense to her claim, and, if she has the better right to the property, it will be open to her to assert it. The question now under consideration is the protection to be afforded to the administrator of an estate, who in good faith yields obedience to the

order of the court whose officer he is, and which court has the possession and control of the property and estate. The plaintiff knew that the probate court was administering the estate of Mrs. McPherson; knew that the question of the distribution of the assets would, of necessity, come before that court for determination; and knew that it would be the duty of the administrator to obey the orders of that court with respect to the property in its charge; and with this knowledge she remained wholly silent, making no claim to the property until the courts of Missouri had dealt with the question, and had ordered the method of distribution, and then she did not apply to the court having charge and control of the property, but instituted an action in this court in the nature of a replevin against the administrator, charging him with having converted the same to his own use. Under such circumstances it must be held that the plaintiff cannot enforce her rights in an action of this nature in a federal court against the administrator. The evidence shows that, upon being notified of the claim of plaintiff through the bringing of this action, the defendant presented the facts to the probate court and sought to have the execution of the order of distribution delayed until this case should be disposed of; but the probate court, deeming the question of distribution to be settled by the judgment of the Supreme Court, refused the application for delay, and refused to grant an appeal from its action, and thereupon the defendant applied to the circuit court for a writ of mandamus to compel the allowance of an appeal, which writ was refused, and thereupon, being cited to answer for contempt in not obeying the order of distribution, the administrator delivered the property in its possession to the parties who had been adjudged to be entitled thereto. The plaintiff took no action in aid of the efforts of the defendant to secure delay in the execution of the order of distribution. Her position toward the defendant was that she proposed to hold the defendant liable to her for the delivery of the property, or, failing that, for its value in money, regardless of any and all action taken by the probate court of the city of St. Louis, thus seeking to place the defendant in a position of liability to two courts at one and the same time. As is said by the Supreme Court in Byers v. McAuley, supra, 'No officer appointed by any court should be placed under the stress which rested upon this administrator, and compelled him for his own protection to seek orders from two courts in respect to the administration of the same estate.' To prevent such a result it must be held in this case that the plaintiff, by her course of conduct and delay in making known her claim, has forfeited any right she ever had to proceed in this court against the administrator.

"Furthermore, is it not the fact that the plaintiff is bound absolutely by the proceedings taken in the courts of Missouri with respect to the distribution of the property of the estate? The plaintiff has no interest in or title to the property in dispute, except through the assignment from William J. McPherson to the sister Jane, and from her to the plaintiff.

"The evidence shows that the proceedings for the administration of the estate in the probate court of the city of St. Louis were initiated by William J. McPherson, and the order appointing the defendant administrator was made before any assignment of his interest therein had been made by Mr. McPherson. The assignments were intended to transfer the interest, if any, which Mr. McPherson had in the estate of his deceased wife. It could not be known, until the administration of the estate was ready to be closed, what the interest of the husband would be, if any, nor the form of the assets of the estate. Any and all of the assets coming into the possession of the probate court might be sold to meet the debts of the decedent and the expenses of administration, or, for safety sake, the court might order a sale thereof; and a reinvestment of the proceeds realized from the personalty. The assignment to the plaintiff did not convey to her the title in any specific article of property in such sense that it was excepted out of the control of the probate court. All that the plaintiff could claim under the assignment to her was that the share or interest which it might prove her father had in the estate of his deceased wife should be paid or be delivered to her. When this assignment was made, the plaintiff knew that the estate was being administered in St. Louis, and it is clear that she then expected that, as a result of such proceedings, her father's share in the estate would ultimately be ascer-

tained, and would be delivered to her father, and through him would reach her. She testified that she knew the estate was being administered in St. Louis; that she knew the defendant was the administrator; that she knew that the probate court had decided that her father was entitled to the property; that she knew the case had been taken up on appeal; that she never gave any notice of the fact of the assignment to her, or of her claim thereunder, to the defendant or to the probate court, and never made any inquiries about the matter of her father or any one; and that she 'expected that the decision of the probate court would be sustained by the other courts, and that eventually it would be sent to Rochester.'

"It cannot be questioned that the plaintiff had no interest in or title to the property until after the same had passed into the control of the probate court, and she is bound by its action and judgment to the same extent as is her assignor. By the assignment she was to become entitled to whatever might be held to be her father's share in the estate, and when the assignment was made by the father the plaintiff knew that the probate court of St. Louis had control of the assets, and was primarily charged with the duty of ordering distribution. She was content to leave the case in that situation. All that she could claim under the assignment was her father's share in the estate of Mrs. McPherson, and the court having charge of the estate, and which had charge of it when plaintiff's right accrued, has ordered, in accordance with the ruling of the Supreme Court, that the father had no interest in the assets of the estate, and hence nothing passed to the plaintiff. Under the facts of the case the plaintiff is bound equally with her assignor by the rulings and judgments of the courts of the state, and is thus debarred from again litigating these matters in this court.

"Finally, if, through any mode of reasoning, it could be held that the question of the right of William J. McPherson to share in the estate of his deceased wife could be presented for consideration to this court, it would be the duty of the court to adopt and follow the ruling of the Supreme Court of Missouri upon the question involved. Thus, in the already cited case of Byers v. McAuley, 149 U. S. 608, 621, 13 Sup. Ct. 906, 37 L. Ed. 867, it is said: 'The other ruling was that the first cousins were entitled to take the estate to the exclusion of the second cousins. In this the Circuit Court of the United States had to deal with a question of local law. The state statutes prescribed the scheme of distribution, and, if the meaning of these statutes was disputable, the construction put upon them by the state courts was binding upon the Circuit Court.' [The Security Trust Co., as Administrator, v. The Black River National Bank of Lowville (Oct. Term, 1902) 23 Sup. Ct. 52, 47 L. Ed. ——].

"Counsel for plaintiff cite the provisions of sections 254 and 255 of the Revised Statutes of Missouri of 1899, to the effect that, where an inhabitant of any other state or country dies intestate, leaving personal property in Missouri, the same shall be distributed and disposed of according to the laws of the state or country of which the deceased was an inhabitant, and that upon the final settlement of such an estate the residue left after the payment of all debts may be distributed and disposed of in the manner aforesaid by the court in which the estate is being settled, or it may be transmitted to the executor or administrator appointed at the domicile of the deceased, as the court may deem best. These sections clearly confer upon the probate court in Missouri the right to distribute and dispose of the property found in the state belonging to the estate of an inhabitant of another state. William J. McPherson, having been appointed administrator in New York of the estate of his deceased wife, applied to the probate court in St. Louis, which had full charge of the property of the estate in Missouri, to make disposition of the assets in its charge. This brought up the question whether the deceased had ever become an inhabitant of the state of New York within the meaning of section 254 of the Revised Statutes of Missouri, and also, if she had so become, what right had the husband to the personal property in Missouri? The Supreme Court of Missouri did not finally decide the first of these questions, holding that it was not decisive of the case, but did hold that: 'If we are to recognize that a citizen of New York, marrying in this state, acquires, by virtue of his marriage, the interest in his wife's estate owned here that

he would have acquired if he had married in his own state a wife owning like property there, we would also have to recognize the absolute rights of a husband coming from a state or country where the common law on the subject was unabridged. We do not recognize any such qualification of the rights of married women under our statute. Since, therefore, the husband did not, by virtue of his marriage here, acquire such title to his wife's personal property as he would have acquired to such property in New York if they had been married there, and since there is no statute of distributions in New York by which he can take the estate, he has no title to it. Section 254, above quoted, is but a legislative expression of a well-recognized rule of private international law. But, since we find no foreign law to govern the case in hand, that statute has no application, and we must administer the estate according to our own statutes.'

"To escape the force of this decision, counsel for plaintiff contend that plaintiff is not a citizen or resident of Missouri, and is not bound by the probate proceedings had in this state; citing in support of their contention the case of Borer v. Chapman, 119 U. S. 587, 7 Sup. Ct. 342, 30 L. Ed. 532, wherein it was held that, as the primary probate jurisdiction was in Minnesota, Chapman, who was a creditor of the estate, was not bound to appear in the ancillary proceedings had in California, but, as a creditor, could enforce payment of the debt due him from property of the estate which had passed into the possession of legatees in Minnesota. This case is so different in its facts that it is not applicable to the situation of the case now before the court, except as it might sustain the right of plaintiff to proceed against the parties now in possession of the assets, to wit, Horace and William C. Locke, in case it be held that plaintiff is not bound by the proceedings in the courts of Missouri."

The judgment of the Circuit Court is affirmed.