Alexander v. Shapard.

JOHN T. ALEXANDER *v.* CHARLES R. SHAPARD *et al.*

(*Nashville.* December Term, 1921.)

1. **REFORMATION OF INSTRUMENT.** Deed to husband and. wife reformed so as to create estate by the entirety where grantees believed that language used created such estate.

Where husband and wife agreed that land should be deeded to them so as to create an estate by the entirety, and were erroneously advised by counsel that a conveyance to them jointly would create such an estate, equity will reform the deed so as to create such an estate in an action by husband against the wife's heirs; there being a mistake of fact. (*Post, pp.* 104-117.)

Acts cited and construed: Acts 1913, ch. 26.

Cases cited and approved: Snell v. Insurance Co., 98 U. S., 91; Griswold v. Hazard, 141 U. S., 260; Trigg v. Read, 24 Tenn., 533; Helm v. Wright, 21 Tenn., 75; Webster v. Stark, 78 Tenn., 414; Park Bros. v. Blodgett, 64 Conn., 28; Canedy v. Marcy, 13 Gray, 373; Trusdell v. Lehman, 47 N. J. Eq., 218; Cooper v. Phibbs, L. R., 2 H. L., 149; Price v. Estill, 87 Mo., 378; Norton v. Highleyman, 88 Mo., 621; Griffith v. Townley, 69 Mo., 13; Cassidy v. Metcalf, 66 Mo., 619; Gammer v. Jones, 52 Mo. 68; Modrell 1. Riddle, 82 Mo., 31; Cromwell v. Winchester, 39 Tenn., 389; Perry v. Pearson, 20 Tenn., 439; Talley v. Courtney, 48 Tenn., 715; Seay v. Ferguson, 1 Cooper's Chy., 295; Harding v. Egin, 2 Tenn., Ch.. 39; Graham v. Quinn, 43 S. W., 749-752.

Cases cited and distinguished: Gill v. McKinney, et al., 140 Tenn., 549; Snell v. Insurance Co., 98 U. S., 85; Cromwell v. Winchester, 39 Tenn., 390; Sands v. Hickman, 3 Higgins, 280; Willard v. Davis, 122 Fed., 367; Lumber Co. v. Shell, 136 Tenn., 466; Walden v. Skinner, 101 U. S., 577; Hunt v. Rousmaniere's Adm'rs, 8 Wheat.. 174; Corrigan, et al. v. Tiernay, et al., 100 Mo., 276.

Alexander v. Shapard.

2. **EQUITY.**  Right not enforced where complainant comes into court with unclean hands.

A right will not be enforced in equity where complainant comes into court with unclean hands, or where it would work an undue or unconscionable advantage.  (*Post, pp.* 117-119.)

3. **REFORMATION OF INSTRUMENTS.**  Reformation of deed to husband and wife jointly so as to create estate by the entirety held not inequitable.

Where wife, whose money was being used in payment for a farm, willingly and freely consented and agreed that the land was to be conveyed to the husband and the wife as tenants by the entirety, without undue advantage being taken of the wife by the husband, equity will not refuse to reform deed conveying land to husband and wife jointly, so as to create an estate by the entirety, in an action by the husband against the wife's heirs, on the ground that it would bt inequitable to grant such relief.  (*Post, pp.* 117-119.)

4. **REFORMATION OF INSTRUMENTS.**  Grantor not necessary party in husband's action against wife's heirs to reform deed to husband and wife jointly, so as to create an estate by entirety on ground of mutual mistake.

Where a husband and wife agreed that land be conveyed to them as tenants by the entirety, and believed that the deed conveying the land to them jointly created such an estate, the grantor was not a necessary party in the husband's action against the wife's heirs to reform the deed, so as to create such estate on the ground of mutual mistake.  (*Post, p.* 119.)

FROM BEDFORD.

Appeal from the Chancery Court of Bedford County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Thos. B. Lytle, Chancellor.

THOS. N. GREEN, for plaintiff.

B. O. KINGREE, CHAS. S. IVIE and J. C. HIGGINS, for defendants.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

This is a proceeding begun by bill in equity to reform a deed on the ground of mistake.

On November 15, 1917, the deed sought to be reformed by the bill in this case was executed by W. E. Gant, conveying to the complainant, John T. Alexander, and wife, Mildred Shapard Alexander, a tract of land in the Seventh civil district of Bedford county, Tenn. The complainant and his wife were married in July, 1916. The wife died on the 20th of December, 1919. There were no children born of this marriage. The defendants are brothers and sisters of the plaintiff's widow, and her only heirs at law. The allegations of the bill are, in substance: That the complainant and his wife, soon after their marriage, entered into an agreement whereby it was agreed that in the event real estate was purchased by them the title to the same should be taken so the survivor would take the entire estate. This agreement is alleged to have been the result of the fact that complainant had an estate of about $6,000 and was earning about $200 a month, and the wife had inherited an estate from her father of approximately $10,000. That, in accordance with this agreement, in 1917 they purchased a house and lot in the town of Shelbyville, and had the deed made to them jointly, and with the understanding and each believing that in case of the death of the other the survivor would take and become the owner

of the house and lot in fee.   That thereafter, and on No-
vember 15, 1917, the complainant and his wife determined
to purchase the farm in question, with the agreement and
understanding that the title thereto would be taken to
them jointly, and so as that in the case of the death of one
the survivor would take the fee.   That the purchase of the
farm was consummated, the complainant and his wife
conveying to W. E. Gant, the owner of the farm, the house
and lot in Shelbyville at a valuation of $2,200, paying
$2,500 in cash and executing two notes for $2,500 each, due
in one and two years respectively, and another note for
$2,000 due three years after date.   That the complainant
and his wife had both been advised by attorneys and by
Mr. Gant, who drafted the deed, that a joint conveyance
to them would have the effect of vesting in them an estate
by the entirety, and one which, in the event of the death
of either would vest in the survivor.   With this under-
standing between them the deed was executed and drawn
so as to convey the farm to them jointly, the conveying
clause thereof being, "I have this day bargained and sold
and by these presents transfer and convey unto John T.
Alexander and wife Mildred Shapard Alexander all the
right, title, claim and interest I have in and to the fol-
lowing described tract or parcel of land," and the *haben-
dum*, "To have and to hold the same to the said John T.
Alexander and wife, Mildred Shapard Alexander, their
heirs and assigns forever."   That after the execution of
this deed both the complainant and his wife understood
and acquiesced in the belief that the deed which had been
executed conveyed to them an estate in the entirety, and
that the complainant had no suspicion that such was not
the case until after his wife had died and her brothers and

sisters set up claim to an undivided one-half interest, and that then, upon investigation, he ascertained that the supreme court of Tennessee had decided that under an act of the legislature passed in 1913 (Acts 1913, chapter 26) commonly known as the "Bejack" law, which emancipated married women, a deed to husband and wife jointly did not convey an estate by the entirety, but constituted the husband and wife tenants in common. Hence the bill sought, upon the averments aforesaid, to have this deed reformed so as to make it conform to the real intentions of the parties at the time, and to have the title to the land vested in the complainant and the claim of the defendants removed as a cloud. The grantor, W. E. Gant, was not made a party defendant, but no exception was taken by the other defendants to this fact, either by demurrer or answer in the chancery court, nor by them on appeal to the court of civil appeals.

The defendants put in issue all the material facts in the bill by answer, and also filed a cross-bill seeking to have the land partitioned, and to have an accounting between them and the complainant and to set up a resulting trust in their favor upon the theory that the land had been paid for with money belonging to the complainant's wife and their sister.

The chancellor was of the opinion that the complainant had made out his case, and that the conveyance of the land to the husband and his wife jointly was a mistake which could be reformed. He therefore pronounced a decree in favor of the complainant, and dismissed the cross-bill of the defendants. The defendants appealed to the court of civil appeals, which latter court reversed the decree of the chancellor and remanded the case to the chan-

Alexander v. Shapard.

cery court for further proceedings in accordance with the
written opinion filed.   The complainant has filed a petition
for *certiorari* to have the decree of the court of civil appeals
reviewed and reversed by this court.

The view of the court of civil appeals, as expressed in
the written opinion, was that, although there was an agree-
ment and understanding between the complainant and his
wife that the deed would be executed so as to create an es-
tate by the entirety, the failure to have such an estate ex-
pressed in the deed or conveyance to them jointly was
but a mere mistake of law, stripped of all other circum-
stances, and constituted no grounds for the reformation
thereof.   On this point the opinion of that court reads, in
part, as follows:

"It is quite difficult, after examining the large mass of
evidence in this record, to come to an entirely satisfactory
conclusion as to the fact, just how the wife of complainant
wanted the deed to the Gant farm made, whether made to
her alone, or to her and her husband jointly.   We think
we can say, however, that when talking to her family rel-
atives and to her family lawyer she wanted the deed made
to her alone.   But when her husband talked and argued
with her, she expressed a willingness for the deed to be
made to them jointly, and the record shows that she said
to a number of parties, some of them the friends of her hus-
band and to others, that she was glad the deed was made
to them jointly.

"There is evidence in the record tending to show that
she agreed for the deed to be thus made—that is, to her
husband and her jointly— as it procured or secured peace
and harmony between her and her husband.

"We think the weight of the proof also shows that her husband, being a man of education and strong will, dominated his wife whenever an occasion arose requiring it.

"After a thorough consideration of the evidence, we have arrived at the conclusion, and we so find that the wife of complainant, in order to have peace and harmony between her and her husband, and out of wifely deference to his wishes, agreed for the deed to be made to them jointly.

"We think it is certain from the evidence that, after the deed was made as it was, both the complainant and his wife believed it created an estate in them by the entirety, and that the survivor would take the fee in the land.

"We may say, in this connection, that the deed as made was believed to create such an estate until the decision of our supreme court in the case of *Gill* v. *McKinney et al.*, 140 Tenn., 549, 562, 205 S. W., 416.

"Under said decision the deed as made constituted complainant and his wife tenants in common in the land.

"It follows, of course, if that be the legal effect of the deed, allowing it to stand as made, defendants as heirs at law of the wife of complainant became owners of one-half of the land as tenants in common with complainant.

"Now, it is quite clear, from the entire evidence in the record, that no fraud or misrepresentation was brought to bear upon complainant or his wife by defendants, or by any one else, to have the deed made as it was made. As before stated, complainant had Judge Gant, the owner of the land, to prepare the deed as it was prepared, and it is obviously true that both complainant and Judge Gant believed the deed created an estate by the entirety in complainant and his wife.

"So we have a case where, assuming that the husband and wife both believed the deed as made created an estate by the entirety in them, both made a mistake of law, or, rather, acted upon a mistake of law, as to the legal pur-port of the deed, and a mistake not superinduced or brought about by fraud or misrepresentation on the part of defendants or any third party. This being so, the main question in the case. is: 'Can there be a reformation of it, so as to make it have a different legal import, whereby the complainant, the survivor of his wife, will take the land absolutely?' "

The opinion, after referring to and discussing authorities cited by counsel, concludes the discussion of this particular point as follows:

"We think the doctrine to be extracted from the great weight of authority is that a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts.   Such as the rule announced in *Snell* v. *Insurance Co.,* 98 U. S., 85, 25 L. Ed., 52.

"There are cases, however, that announce the rule that the reformation of a written instrument may be made by a court of equity for a mistake of law.

"The underlying principle of these cases seems to be predicated upon the idea that one of the main objects in the exercise of its jurisdiction by courts of equity is to get the intention of the parties to contracts and effectuate that intention, and, pushing this doctrine to its logical end, hold that any mistake of parties that defeats their intention will be corrected, whether it be a mistake of law or of fact.

146 Tenn.—7

"In *Cromwell* v. *Winchester*, 2 Head, 390, 392, Judge CARUTHERS speaking for the court in the case, in reference to a deed before it which was sought to be reformed, said 'that this power of reformation has been always exercised in proper cases by courts of chancery,' and, 'if by mistake, the writing contains less or more, or something different from the intent of the parties, and this be clearly made out by proof entirely satisfactory, a court of equity will reform the contract so as to make it conform to such intent.'

"The court in the case was dealing with a deed which had not contained a provision that the parties intended should be inserted in it.

"Of course, no one doubts the jurisdiction of a court of equity to reform a deed or contract, which, by mistake, failed to contain words essential to the carrying out of the intention of the parties.

"In that case the deed failed to have in it the word 'heirs,' which was indispensable to convey an estate of inheritance, and with that word left out of the deed, only a life estate was created, when it was made to appear to the court, beyond a doubt, practically, that it was the intention of the parties that the deed should convey a fee.

"In the case of *Sands* v. *Hickman*, 3 Higgins, 280, this court in deciding the case used the following language:

" 'The jurisdiction of a court of equity to reform a deed so as to make it conform to the intention of the parties cannot be doubted; but the proof upon which relief is sought must be clear and satisfactory.

" 'And the relief may be granted, although the parties deliberately and knowingly used the words subsequently found inadequate to express their intention, if it transpire

that the parties were honestly mistaken as to the legal effect of the instrument, that is, believing that the instrument conveyed a life estate in the lands when it actually vested vendee with the fee.' "

The court of civil appeals took the further view—and that is practically made the basis of their decision—that, although such a mistake as was made might be made the basis for reforming the deed, it ought not to be done in this case, because under the discretionary power of a court of chancery clear equity did not require it. This view of the court of civil appeals is expressed in the opinion as follows:

"Conceding that a party may invoke the aid of a court of equity to reform a deed which expressly contained the language he used in it, when, under subsequent developments, he discovered that it did not have the legal effect he thought it had—

"In other words, when he executed the deed, simply mistaking its legal import, his mistake not being superinduced by the other party to the instrument—complainant, it appears to us, is confronted with another serious obstacle confronting him in this case.

"We take it to be well settled that courts of equity grant reformation of written contracts, deeds, etc., deliberatedy entered into by parties, the party claiming reformation having the instrument written as he desired, only in rare cases, and certainly so when the complaint made is based upon a mistake of law by the party, and this only when necessary to right a wrong or to effectuate justice.

"As said by a learned court. 'That granting reformation of a written instrument was a matter of discretion with the court, and that the party must come into the court with clean hands, and that the claim must be just between the parties.'

"In other words, it will not do so unless clear equity requires it.

"In *Willard* v. *Davis* (C. C.), 122 Fed., 367, the court said:

" 'Although the rules of equity in a case demanding it, do not hesitate to grant such relief as now prayed for [that is, reformation], yet, as required by a proper regard for the rights of parties who have formulated their own contracts, the courts fully recognize the solemnity of an instrument of this character, and they will not disregard it unless justice clearly requires that they should do so.'

"The supreme court of the United States in a very able opinion thus states the rule:

" 'That equity will relieve against a misapprehension of the law only in the most flagrant cases, and that no such remedy will be granted unless it would be manifestly unjust for the opposing party to retain the fruits of the contract.' *Snell* v. *Insurance Co.,* 98 U. S., 91, 25 L. Ed., 52; 1 Story, Eq. Jur., 138. See, also, *Griswold* v. *Hazard,* 141 U. S., 260, 11 Sup. Ct., 972, 999, 35 L. Ed., 678.

"The rule to be extracted from the cases on this subject seems to be, that courts of equity, in the exercise of their jurisdiction to reform written instruments on account of a mistake or ignorance of rights, proceed with the utmost caution, and will not grant relief in such cases unless the proof is clear, exact, and satisfactory, and unless to reform the instrument will effectuate the end of manifest equity and justice.

"Now, with the rule of equity just stated, is complainant entitled to the relief granted by the chancellor?

"As before stated, if we assume that the wife of complainant was willing for the deed to be executed so as to

create an estate by the entirety, and that both believed that the deed as executed with their full approval, knowing its contents, created such an estate, when, as a matter of law, no such an estate could be created under the law of this State, and when the deed they had made created an estate held by them as tenants in common, is complainant entitled, under the facts disclosed by the record, to have the court decree him the benefits arising under an estate by the entirety?

"The writer of this opinion feels constrained to say that he has very grave and serious doubts as to complainant being entitled to claim such relief under the facts of this case.

"The record shows, beyond dispute, that the parents of the wife of complainant left her about $10,000 and it is fairly inferable from the proof that her means, partly at least, paid for the house and lot the parties purchased in the town of Shelbyville, and it is reasonable to infer, from the proof, that her means practically paid all that had been paid on the purchase price of the Gant farm when this litigation was instituted.

"It further appears, from the testimony, that complainant and his wife kept separate bank accounts, 'and complainant stated that he checked on her account as he pleased, and she on his, and complainant himself testified that he first noticed a disposition on the part of his wife not to have the title to the Gant farm taken to them jointly after the trade had been agreed upon, but before the deed was made, she telling him that Mr. Ivie had always been their family lawyer, and she wanted to go and talk to him about the place, and he told her to go ahead and talk to Mr. Ivie, and complainant testified that her wanting to

talk to Mr. Ivie made him think there was something in her mind, but she did not say what, or what change she wanted made, and he testified after she went to Mr. Ivie she said to him that she ought to have it made to her, and then she make a will willing it to me for my lifetime, and that he refused to agree to this, and he testified that Mr. Ivie came to his office and told him that his wife was crying, and that he ought to have the deed made to her, and she would make and keep a will to me, and he told him he would not agree to it at all.

"Now, complainant details a number of conversations he had with his wife bearing upon this question, which were excepted to, and the exceptions sustained by the court.

"Complainant stated that his wife had deposited in the bank at her death in her name $1,920.93.

"As before stated, the evidence shows, with reasonable certainty, that the funds of the wife of the complainant paid practically all that was paid on the real estate purchased by these parties after their marriage.

"The testimony of complainant himself shows, in checks he exhibited with his deposition, that over $7,000 of checks showing her name signed by him were used by him.

"Now, as before shown, the wife of complainant, before the deed to the Gant farm was executed, wanted the deed made to her, and that complainant would not agree for it to be so made.

"Now there is no material evidence in the record tending to show that her brothers and sister sought to interfere in the matter of the character of deed to be made to the Gant farm until they learned, in substance, what occurred between complainant and his wife after her interview with Mr. Ivie, the family lawyer. But, as before stated, com-

plainant was a man of education and strong will, and it is obvious that his wife acquiesced in his wish and will that the deed be made as it was made.

"Under the facts, as thus disclosed, ought a court of equity to reform said deed, so as to give complainant the fee absolute to the Gant tract of land?

"The writer of this opinion cannot give his assent to such a contention under the facts of this case."

We are unable to concur in either view of the court of civil appeals above referred to.

The chancellor and the court of civil appeals concurred in their findings as to the material facts with respect to the mistake made in the execution of this deed. As we have seen, the court of civil appeals concludes and finds, after a thorough consideration of the evidence, that the complainant's wife agreed for the deed to be made to them jointly, believing that it created an estate in them by the entirety and that the survivor would take the fee in the land, and that this belief was entertained by them until the decision of this court in the case of *Gill* v. *McKinney,* 140 Tenn., 549, 205 S. W., 416, rendered in the year 1918. The evidence shows in accordance with this finding that, after the purchase of this land had been negotiated, and before the deed was executed it was agreed and understood between the complainant and his wife that the land should be deeded to them so as to create an estate by the entirety, and that both of them were advised by counsel and acted upon the belief that a conveyance to them jointly would have that effect. The question was brought to a sharp issue between the complainant and his wife at the instigation of some of the wife's brothers and sisters, who insisted upon their sister having the deed made to her alone, and

not to the complainant and his wife jointly. The point made by the wife's brothers and sisters, and which she made to her husband, was that, if the deed was made to them jointly, the land would go to the husband, and through him to his heirs, instead of to her heirs in the case of her death without child. The wife finally consented and agreed, notwithstanding this insistence upon the part of her brothers and sisters, complainant declining to purchase under any other kind of a deed, that the deed should be made to them jointly, so as that, in the case of her death, the land would go to him, and in the case of his death it would go to her. She consulted her counsel, who advised her that a deed executed to her and her husband jointly would have that effect, and Mr. Gant, who drafted the deed, likewise so advised her and the complainant before the deed was executed. There can, therefore, be no escape from the conclusion and finding that it was distinctly understood and agreed that the deed would be executed so as to vest in them an estate by the entirety, and the deed was drawn as it was drawn under the misapprehension and the belief of all parties thereto that the language used would have that effect.

Is this such a mistake of law only as that a court of equity will not intervene to make the deed express the real intention of the parties? It is quite true that ignorance of the law furnishes no ground for rescission. *Trigg* v. *Read,* 5 Humph., 533, 42 Am. Dec., 447. If the parties intended to use the words in the sense which they really convey, if the thought to be expressed was the idea the parties intended to convey, then there is no mistake of fact, but one only of legal consequences. *Helm* v. *Wright,* 2 Humph., 75. If the instrument is drawn exactly as it was

Alexander ,v. Shapard.

intended, naturally there can be no relief by way of reformation.  *Webster* v. *Stark,* 10 Lea, 414.  As was said by this court in *Lumber Co.* v. *Shell,* 136 Tenn., 466, 189 S. W., 879:

"Reformation of a written instrument will not be decreed where the instrument accords with the purpose of the parties at the time of its execution;  .  .  .  they are not entitled to such relief merely because their intentions were influenced by mistaken considerations.  The question always is, What did the parties intend at the time they contracted? not what they would have done if they had been better informed."

These are but expressions of a well understood principle of equity.  It is stated by Mr. Pomeroy (4 Ed.) section 843: "Where the parties, with knowledge of the facts and with the equitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a rescission or grant reformation, although one of the parties, and as many cases hold both of the parties, may have mistaken or misconceived its legal meaning, scope and effect."

Here we have a case where the language of the deed did not correctly express the intention and agreement of the parties.  It was intended that a deed should be executed which would vest in the complainant and his wife an estate by the entirety.  It was believed that the language of the deed would have, and it was intended that it should have, that effect.  The draftsman of the deed, who was also the grantor, intended to express the real intention and agreement of the parties.  The parties accepted the deed and acquiesced in its language with the mistaken be-

lief and understanding that it did express the true intent and agreement, this mistake having been induced by the advice of able counsel. Even able counsel were misled by the fact that the Married Woman's Emancipation Act had not been passed upon by the courts as its effect upon a deed to husband and wife jointly. To say the least of it, at the time of the execution of this deed the question was a mooted one, and the mistake most natural. This was not strictly a mistake of law, but rather one of fact, a mistake occasioned by the parties in the use of words inadequate to convey the real and true meaning, intention, and agreement of the parties. It is such a mistake as equity will correct, and such a one as is recognized by the best authorities and by the courts of this country, including this court.

Mr. Story, in his work on Equity Jurisprudence (4 Ed.), section 205, says:

"Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement."

The foregoing quotation is taken from the opinion of the supreme court of the United States in the case of *Hunt* v. *Rousmanier*, 8 Wheat, 174, 5 L. Ed., 589.

In 1 Elliott on Contracts, section 109, p. 185, it is said:

"Quite frequently parties to an agreement have reached an oral understanding and then attempted to reduce it to writing. In so doing, through some mistake on the part

Alexander v. Shapard.

of the scrivener or on the part of the parties in the selection of words used, the writing fails to give expression to the contract it was intended to evidence. Such an error does not render the contract void because the minds of the parties never met, for their minds did in fact meet, but the agreement as written merely fails to give expression to the real agreement. Against errors of this nature equity will grant relief in a proper case by permitting them to set up as a defense, or by cancelling or reforming the written contract so as to make it conform to the real intention of the parties. It is apparent, however, that the writing will not be reformed unless there was a prior agreement, so certain and definite in its terms that a court might enforce it. Any other holding would result in making a contract for the parties which they themselves did not make. Before the contract as written can be reformed, there must be an agreement to which it should conform. It must not only be shown that the writing does not give expression to the real contract, but the actual contract must also be shown. If the prior agreement would be unenforceable because of some legal disability on the part of one of the parties, or be void because of some statute or positive rule of law, the agreement will not be enforced. However, the statute of frauds does not defeat the reformation of a contract merely because the prior agreement was not in writing. The statute is intended to prevent, not to promote, fraud, and must be so construed. Consequently it has been held that deed of conveyance of land may be reformed notwithstanding the fact that the contract of sale was oral."

And in the same section, on pages 187, 188, citing a large number of authorities, it is said:

"But the rule that the mistake must be mutual in order to entitle one or both the parties to the contract to set up mistake as a defense, or as ground for cancellation or reformation of the contract, does not apply where one of the parties was mistaken and the other guilty of fraud or inequitable conduct.

"Equity will also relieve against mistakes made by the scrivener where he fails to draw up the agreement in accordance with instructions, the mistake being deemed the mistake of both.  Thus, where the parties to a deed intended that a fee-simple title should be conveyed, but the word 'heirs' was omitted, so that only a life estate was conveyed, a reformation of the deed will be decreed, although the omission arose from a mistake of law made by the scrivener."

In 28 R. C. L., 324, it is said: "It has been held that, where there was an honest mistake of law as to the effect of an instrument, or where the mistake is of so fundamental a character that the minds of the parties had never met, or even where, in the case of a written contract, they had not met on the terms expressed in the writing, reformation would be allowed where it would be inequitable or unconscionable of the other party to take advantage of the mistake in question."

And again, on page 326, it is said: "Where the scrivener, through unskillfulness or lack of knowledge of the rules governing conveyancing, or in other matters, has failed to express in the instrument the intentions of the parties thereto, the courts have frequently granted relief by reformation.  For example, where an attorney in drawing a deed by which a father conveying a life estate to his daughter, neglected to insert in it the clause 'for her sole and separate benefit,' the mistake was corrected."

Alexander v. Shapard.

In 23 R. C. L., p. 337, it is said: "A lease executed under a mistake of the lessor as to the term of the lease, which was known or suspected by the lessee, may be reformed and the lessor will not be precluded from his remedy merely because of inattention to the reading of the lease by the notary who took the acknowledgment of the lessor."

In 2 Pomeroy's Equity Jurisprudence (4 Ed.), section 845, it is said:

*"Reformation of an Instrument on Account of a Mistake of Law.*—The first insistence which I shall mention is closely connected with the doctrine stated in the last paragraph but one. It was there shown that, if an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract, which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such er-

rors are those as to the legal effect of a description of the subject-matter, and as to the import of technical words and phrases; but the rule is not confined to those instances."

Mr. Pomeroy, in volume 5, p. 4730, says that, even in cases of unilateral mistake, courts have made a decree for cancellation conditional upon refusal of defendants to consent to reformation, citing *Gargard* v. *Frankel,* 30 Beav., 445; *Paget* v. *Marshall,* L. R., 28 Ch. D. 255.

And further (see note 8, p. 4730) : "Where the defendant was aware not only that the instrument did not express the real agreement, but that the plaintiff was ignorant of a discrepancy between the instrument and the agreement, the case is one for reformation."

The fundamental thought controlling in a question of this sort is the ascertainment of the true purpose and intention of the parties, and whether or not that purpose and intention is expressed in the instrument under consideration, whether the controversy be one for construction or a reformation of an instrument.

"In either case, the purpose of the parties at the time the deed was made would determine the effect of the instrument, for the primary rule of construction of contracts is to carry out the intention of the parties thereto." *Pittsburg Lumber Co.* v. *Shell,* 136 Tenn., 466, 189 S. W., 879.

In the case of *Walden* v. *Skinner,* 101 U. S., 577, 25 L. Ed., 963, the supreme court of the United States said: "Decisions of undoubted authority hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact

or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his agreement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, ·by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties. *Hunt* v. *Rousmaniere's Adm'rs,* . . . 8 Wheat., 174, 211."

A case in which the rule as stated by the supreme court of the United States in the case just quoted from was applied is that of *Marshall* v. *Lane,* by the supreme court of the District of Columbia, reported in 27 App. D. C., 276. That case is identical in principle with the one under consideration, and almost so in its facts. In that case it was shown to be the intention of the parties that the deed should convey an undivided interest each to the husband and wife. The·conveyance was made to them jointly. Under the law as it existed at that time in the District of Columbia, where the deed was executed, the effect of the language of the deed was to create a tenancy by the entirety in the husband and wife. They had been advised by a friend, who had some legal knowledge, and upon whom they relied, that the deed would have the desired effect. After the death of the husband his heir at law brought suit

against the surviving wife to reform the deed so as to make it convey to the wife according to the original intention an undivided interest in the property. In that case the court said:

"The mutual mistake made under such circumstances comes nearer being one of fact than of law, and is subject to reformation upon established legal principles applicable to mistakes of that character. 2 Pom. Eq. Jur. section 845; *Park Bros.* v. *Blodgett,* 64 Conn., 28, 34, 29 Atl., 133; *Canedy* v. *Marcy,* 13 Gray, 373, 376; *Trusdell* v. *Lehman,* 47 N. J. Eq., 218, 220 Atl., 391.

"Again, the mutual mistake of the parties in respect of the title under which they held the property is analogous to a mistake of fact, in that it was a mistake of private right rather than of general law relating to the subject-matter of an ordinary contract. *Cooper* v. *Phibbs,* L. R., 2 H. L., 149. The complainant in that case had, through a mistaken construction by all parties of certain deeds of settlement and an act of Parliament relating thereto, taken a lease from the defendant of property which, by a proper construction of those instruments, was actually vested in himself at the time. There was no element of mistake or fraud. Lord Westbury, in giving an opinion sustaining the bill for relief, said: 'The result, therefore, is that, at the time of the agreement for the lease which it is the object of this petition to set aside, the parties dealt with one another under a mutual mistake of their respective rights. . . . It is said, *'Ignorantia juris haud excusat;'* but in that maxim the word *'jus'* is used in the sense of denoting general law, the ordinary law of the country. But when the *jus* is used in the sense of denoting a private right, that maxim has no application. Private right of ownership is a matter of fact. It may be the result, also,

of matter of law; but, if parties contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is that that agreement is liable to be set aside as having proceeded upon a common mistake.'

"The decree entered was right, and will therefore be affirmed, with costs. Affirmed."

Another case in which this principle of equity was applied so as to reform a deed very similar in its facts is that of *Corrigan et al.* v. *Tiernay et al.,* in the supreme court of Missouri, 100 Mo., 276, 13 S. W., 401.   In that case the intention of the parties was that the deed should be made to Patrick Tiernay and his wife so as to invest in them an estate by the entirety.  The deed was by mistake drawn so as to name the grantee therein as Catherine Tiernay, wife of Patrick Tiernay.   With respect to this situation the court said:

"The point pressed upon our attention is that, according to the answer, Patrick Tiernay had full knowledge of all the facts, and the mistake was simply a mistake of law, in supposing the deed would convey the title to him and his wife jointly.   It is a well established general rule that a court of equity will not grant relief against a mistake of law, unmixed with any mistake of fact.   *Price* v. *Estill,* 87 Mo., 378; *Norton* v. *Highleyman,* 88 Mo., 621.   There are; however, some exceptions to this general rule.   Cases arise where there is a mixed mistake of law and of fact in which relief will be granted.   Thus in the case of *Griffith* v. *Townley,* 69 Mo., 13, an administrator sold land to his intestate, supposing that it was the fee that he was selling, and the purchaser supposed that it was the fee that he was buying.   It transpired that nothing passed by the sale but

146 Tenn.—8

the equity of redemption. It was held that there was such a mutual mistake of fact and law as entitled the purchaser to relief. See, also, *Cassidy* v. *Metcalf*, 66 Mo., 519. But it is not necessary to a disposition of the case in hand to follow out the many distinctions taken in the class of cases just mentioned. If an agreement is what the parties thereto intended it should be, equity does not interfere, because the parties did not understand its legal effect. 'The principle underlying the rule is,' says Mr. Pomeroy, 'that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into a transaction, but which they might or even would have had if they had been more correctly informed as to the law.' 2 Pom. Eq. Jur., 843. A different case is presented where the instrument, as it is reduced to writing, fails to express the contract which the parties actually entered into. In such cases equity will reform the contract, and this, too, though the instrument fails to express the contract which the parties made by reason of a mistake of law. Says the author last named: 'In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative and defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.' Id., section 845. Now, the answer of Tiernay states that he was desirous of acquiring a home by having the title invested in himself and wife as an estate by the entirety. The legal effect of a conveyance to husband and wife is to create such an estate, and the survivor takes the whole. *Garner* v. *Jones*, 52 Mo., 68; *Modrell* v. *Riddle*, 82 Mo., 31. The answer dis-

closes the fact that Smithwick resided in the State of Kansas, but had an agent in St. Louis; and it then states that defendant 'directed the said grantor, Smithwick, through his agent in St. Louis, to make the deed of said property to Catherine Tiernay and defendant as joint grantees; that thereupon, through some mistake or misapprehension of said Smithwick or his agent, the said grantor executed and delivered a deed to defendant to the said premises, . . . . describing the grantees as Catherine Tiernay, wife of Patrick Tiernay.' Here is enough to show that the contract which the defendant made was that the deed should be made to himself and wife as grantees. This contract the deed does not express, and it is competent for a court of equity to make it express the real contract."

Many other cases might be cited illustrative of this principle and the application thereof to the case which we have here. We know of no case in our own reports on all fours with the facts of this case, but the application of the principle stated is illustrated in the following cases found in our reports: *Cromwell* v. *Winchester,* 2 Head., 389; *Perry* v. *Pearson,* 1 Humph., 439; *Helm* v. *Wright,* 2 Humph., 72; *Talley* v. *Courtney,* 1 Heisk., 715; *Scay* v. *Ferguson,* 1 Cooper's Chy., 295; *Harding* v. *Egin,* 2 Tenn. Ch., 39, 41; *Graham* v. *Quinn* (Tenn. Ch. App.), 43 S. W., 749-752.

In the case of *Cromwell* v. *Winchester,* supra, the reformation was of a deed to a trustee for Mrs. Elizabeth Armour and "her children forever," omitting the word "heirs." By parol evidence it was made to appear that it was the intention of the conveyor to create an estate in fee, and, as the deed was drawn and executed in 1843, the ab-

sence of the words "and heirs" would result in giving the conveyees only a life estate.

In the case of *Brown* v. *Johnson,* memorandum opinion, decided at Knoxville at the September term, 1921, the court reformed a lease contract in which, by mistake of the draftsman, a different legal effect to that intended was created by the words used therein. It was shown in that case that the parties contracted for renewal of a lease at the expiration of a certain term, provided the parties could agree upon the terms. The draftsman undertook to express this intention and agreement of the parties by the use of the words "parties of the second part are hereby granted refusal of the building for a period of five years from the expiration of this lease." The legal effect of the language used was held to be to give the lessee the refusal of the building at the expiration of the period of the lease at the same rental per month, whereas the true intention which the draftsman thought he was expressing in the lease was merely to give the lessee the refusal at the expiration of the lease if the parties could agree upon the rental. This lease contract was reformed upon the principle which we have heretofore stated.

Counsel for the defendant rely upon the opinion of the court of civil appeals in the case of *Johnson* v. *Johnson,* decided recently by that court, in opinion by Mr. Justice FAW, at Jackson, Tenn. The theory upon which this court affirmed the Johnson Case is not opposed to the principles which we think must necessarily be applied here, and that is, where the parties have mistakenly used words in a deed which do not express the real intention and agreement of the parties, such a mistake will be corrected and the instrument reformed so as to conform to the true intention

of the parties. We have such a situation presented in this case.

We do not think there is disclosed in this record any such state of facts as would render it inequitable, unjust, or unconscionable to reform this deed. Of course such an equity will not be enforced where the person invoking it comes into court with unclean hands, or when it would work an undue or unconscionable advantage. The theory of the court of civil appeals seems to be that, because the wife furnished most of the money that was paid on this farm, and consented for the deed to be made to her and her husband jointly under her husband's influence, the husband thereby obtained an inequitable advantage over his wife which would be consummated by a reformation of this deed. There is no evidence tending to show that any undue advantage was taken by the complainant of his wife. It does appear that she thought at one time during the negotiations that, in view of the fact that her money was being used in payment for the farm, the deed ought to be made to her alone, but, after a full discussion and consideration of the matter with her husband, in which it appeared that their joint property at Shelbyville was being put into the price, that the husband would have to contribute of his labor and means to pay for the land and improve it, she willingly and freely consented and agreed that it might be so done. There was nothing wrong or unjust in the act of the husband in convincing his wife of the advisability of taking the deed that way. They were husband and wife, and in case of his death she would have gotten the entire property, just as in the case of her death he would take the entire property. She had a perfect right, if she desired, to give all of her property to her hus-

band.  There is no undue influence shown upon the part of the husband such as would make it inequitable or unjust to carry out the agreement and understanding which they had.  While there is evidence that the husband was firm in his determination not to purchase the land unless the title was taken to him and his wife jointly, and that the wife was disturbed by reason of his attitude, and that of her brothers and sisters, who were even more persistent in their efforts to influence the wife to insist upon her having the title taken to herself.  At this time the purchase had not been made, and when it was made, so far as the record is concerned, the wife was entirely agreeable to the deed being executed as it was, and without any undue influence being brought to bear on her she consented and agreed that the title should be made so as to vest an estate by the entirety in her husband and herself.  During the time that passed thereafter until her death no dissatisfaction of this arrangement is shown to have existed on the part of the wife.  The mere fact that she contributed of her means to the payment of the land offers no ground for denying to him the equity to which he is otherwise entitled.  The money belonged to her.  The brothers and sisters had no legal right to demand an expectancy in her property.  It was hers to give to her husband if she desired to do so.  The arrangement was not even a gift, but was merely an investment, and the title to the property taken in such a way as that in case of his death she would have a home that could not be disturbed or divided by the heirs of her husband, just as in case of her death the husband would have a home undisturbed by any claim of the heirs of the wife.  The agreement was in no way unlawful or inequitable within itself, nor is there any evi-

Alexander v. Shapard.

dence of its having been obtained by any undue influence, or contrary to the wishes of the wife. It is not a case of the taking of the wife's money and investing it contrary to her wishes. We think there is nothing in this record to justify the court in refusing to carry out the real intention and agreement of these parties.

It is suggested in the argument of counsel for the defendants that Gant, the grantor in the deed, is a necessary party to this litigation, and that the court is without jurisdiction to decree a reformation unless he be a party. The jurisdiction of the court is not dependent in this case upon the presence of the grantor in court. A decree can be pronounced binding between the complainant and the defendants. The entire title of the grantor had passed to the complainant and his wife, and nothing remained in him to make it necessary for him to be a party to the case. The question suggested by the defendants was not made in the pleadings; neither was it made by them in the court of appeals, to which court they appealed from the decree of the chancellor.

We are of the opinion that the correct result was reached by the chancellor, and therefore the decree of the court of civil appeals will be reversed and the chancellor's decree affirmed. The costs of the chancery court will be paid as adjudged by the chancellor, and all costs incident to the appeal will be paid by the defendants.